# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR THE APPOINTMENT OF COUNSEL

**STATEMENT OF THE CASE:**

This is a civil rights case filed under 42 U.S.C. §1983 by a state prisoner and he is asserting claims for the denial of immediate and effective medical treatment when it was medically necessary and a serious need for medical care.

The plaintiff seeks damages on all claims and a preliminary injunction to have the plaintiff receive immediate cancer treatment without further or future delays and the continuing scheduling conflict in which the plaintiff continues to suffer with pain from the complications of Bladder and Prostate cancer. All defendant(s) (Hensley, Newland, Ojukwu and Cardaras) changed the doctors' (urologist and the oncologist) medical orders. The doctors ordered the dietary supplement "Ensure" which was totally disregarded by the defendants and the plaintiff was not given any dietary supplement to help maintain and keep the plaintiff's weight and nutritional value. This was and is a violation of the plaintiff's 8th Amendment.

The defendants have a custom and routine of either refusing to prescribe what the outside hospital doctor have ordered or will generally prescribe what they believe is necessary for the plaintiff's care. The defendants would change the doctor orders from the pain medicine of "Ultram" to the generic drug of "Tylenol" or "Ibuprofen". Neither one of these over the counter medicines help to relieve any of the plaintiff's pain or suffering. Not that the prescribed medicine that the surgeons have ordered are not available at the institution, but due to the defendant having their own policy to not give inmates pain medicine due to the formulary requirements authorization needed by the Department of Rehabilitation and Correction's policy on Class I and II scheduled drug class. The defendants were all aware of the plaintiff's health already being compromised by an underlying immune system deficiency due to other medical ailments and should have known that the plaintiff

3

had a serious medical health problem. Complying with a doctor's prescription or treatment plan is a ministerial function, *not a discretionary* one. See <u>Estate of Burks Ross</u>, 438 F.2d 230, 235 (6th Cir. 1971).

The defendants of the Mansfield Correctional Institution medical staff have and had a track record of not issuing doctor prescribed pain medicine when the plaintiff was incarcerated there between October, 2021 through October, 2022 of procrastinating and prolonging treatment when it came to inmate health care. Regardless of what doctor ordered any type of pain medicine, it would be changed even when the medicine was available in the institutional pharmacy. There was always a cost cutting budget saving treatment plan more convenient than to spend money on inmate health care to save the State of Ohio money when it came to medical treatment especially of any type of cancer treatment. Initially, "[t]he proposition that deliberate indifference to a prisoner's medical needs can amount to a constitutional violation has been well-settled since <u>Estelle</u> in 1976." <u>Parsons</u>, 491 F. App'x at 602. Furthermore, we have already noted that this Circuit's precedent is clear that neglecting a prisoner's medical need and interrupting a prescribed plan of treatment, even for a relatively short period, can constitute a constitutional violation. See <u>Terrance</u>, 286 F.3d at 844-45; <u>Comstock</u>, 273 F.3d at 702; <u>Boretti</u>, 930 F.3d at 1154.

The preliminary injunction would protect the plaintiff against further and future failures of medical care and treatment.

The Complaint alleges that the plaintiff was denied medical treatment that would have caught the tumor before it had a chance to mutate and to become cancerous. Had the defendant's (Hensley, Newland and Ojukwu) taken a more aggressive and a thorough investigation into the plaintiff's health concerns, the tumor would not have become cancerous with an early detection and prevention regiment. It is a known medical fact that any type of cancer treatment or care for cancer is expensive

4

and costly to the State of Ohio and Ohio's Department of Rehabilitation and Correction's medical budget. It is routinely acceptable to prolong treatment for inmates who have cancer, due to cost, and to just let nature take its' course than to give an "all hands on deck" to fight cancer when it comes to prisoners. The cost outweighs the benefits of the treatment and the value of an inmate's life.

The plaintiff was informed by both doctors, (urologist and oncologist) that when the plaintiff inquired to both doctors, they informed the plaintiff that tumors do not enter into an individual's body cancerous. They become cancerous if the tumor cells are left alone and allowed to grow undetected and the tumor cells mutate into becoming cancerous. That detection can be easily discovered by a biopsy of the suspected organ or area. It also has a number of signs and symptoms that can alert a physician by having bloody urine, painful urination, high concentrations of proteins and ketones in ones' urine and/or the PSA levels in a blood test are elevated. The doctors also informed the plaintiff that by reviewing his medical records at the upstart of his pain and complaining for over a year and a half (1 and ½), this was an adequate amount of time for the tumors to mutate and to become cancerous when allowed to sit for that long. When the plaintiff was experiencing and having all of these symptoms the defendants kept deciding that the plaintiff only had Urinary Tract Infections. This was true but the plaintiff had over five (5) UTI's in a time span of six (6) months. Also being prescribed antibacterial medicine which hardly if ever, cleared up the UTI's but the painful urinations, blood in the urine and high counts of protein and ketones in all the blood and urine tests continued to advance upwards in elevation for obvious reasons. The reasons that no medical staff at the Mansfield Correctional Institution wanted to investigate nor research further. Which ended up leading to the Plaintiff having Bladder and Prostate cancer.

What doctor would continue to prescribe the same medicine or treatment that was not improving, curing or working towards solving the medical problem with the plaintiff. That would be

5

a fruitless endeavor to continue on the same path of failure.

## ARGUMENT

## WHY THE COURT SHOULD APPOINT COUNSEL FOR THE PLAINTIFF

As to why this Honorable Court should appoint counsel to the plaintiff. The plaintiff is an indigent litigant, which the court knows due to the fact that the plaintiff was granted informa pauperis and the plaintiff is grateful. If the Court should take into consideration the factual complexities of this case and the inability of the plaintiff being indigent and cannot investigate the facts, the existence of conflicting testimony to be established in this case and to navigate the legal minefields unassisted or unaided with an attorney would be suicidal for the plaintiff to even try to take on the legal aspects of fighting this case without legal representation. The defendants in this case have college degrees in the medical field which is the basis of this foundation in this dispute.

1. **Factual Complexity:** The plaintiff alleges that there are several defendants that denied him serious medical attention for a serious medical need by not providing him the necessary and significant medical care to deduce and the diagnosis needed to prevent his eventually having Bladder and Prostate Cancer. This was not due to the defendant not having the necessary equipment, medicine or even their training, but to their deliberate indifference, their wanton disregard to the plaintiff's health and safety.

2. **The Plaintiff's Ability and Inability to Investigate:** The Plaintiff is a prisoner and a ward of the State of Ohio and the Ohio Department of Rehabilitation and Correction and has no ability to investigate the facts of this case thoroughly. The Plaintiff has been transferred from the institutions where the harm happened to him. Therefore, the Plaintiff has no way to review medical records that are kept in storage and control of the defendants (gate keepers of records) that are the gate keepers in this case.

3. **Conflicting Testimony:** The Plaintiff's account of his medical mistreatment and harm done to him will be squarely in conflict with the statements of the defendants and surely will have to have a professional individual capable of litigating these facts from fiction. To be able to differentiate the difference in the laws of the Court and to secure an equal, fair and legal representation for the Plaintiff. The existence of these credibility issues should support the granting and approval the Appointment of Counsel for the Plaintiff.

4. **The ability of the Indigent Prisoner to Present His Claim:** The ability of the indigent prisoner with no legal training and with very limited access to the legal law library. Access to the law library is limited due to the many factors here at the Richland Correctional Institution from the institution not having enough staff member, (Correctional Officers) to cover the post of the legal law library for security purposes. This institution is going through updates as far as construction being done on the inmate chow hall, which means that it takes a lot longer to feed the total population instead of the meals being done within an hour and a half (1½) now takes approximately two (2) to two and one half hours to feed the population. This extra time cuts into the daily operations of the institution. There is no inmate movement other than to feed the meals. There is no educational school, no inmate passes to go anywhere other than medical, no inmate movement to any non-essential institutional jobs. No movement, Period! There are Heavy Construction Equipment that has to be monitored at all times when in and on the institutional grounds. This construction is estimated to last for a minimum of one (1) year. Therefor access to the law library will continue to be very, very limited for inmates to gain any access to legal materials to help ones' self.

5. **Legal Complexity:** With the number of defendant involved in this case, one whom is in a Supervisory Official position and the medical field presents a complex and technical issues of determining which defendants were sufficiently involved in the constitutional violations to be held accountable and liable for the harm done to the Plaintiff. In addition, the Plaintiff has asked for a jury trial, which requires much greater legal skill and understanding of the law that the Plaintiff has or can develop for this case and to have a fair chance at receiving justice.

6. **Merits of the Case:** The Plaintiff's allegations, if proven, clearly would establish a constitutional violation against the defendants of the 8th Amendment of the U.S. Constitution.

7

No prisoner should be denied medical treatment or pain medicine when the defendants knows of the sufficiently serious risk of harm to the prisoner when there is a serious medical need for medical attention. Especially when the defendants have complete and total control of this medically needed treatment and medicine, in which the Plaintiff being a ward of the State of Ohio and of the Ohio Department of Rehabilitation and Correction. The Plaintiff has no other alternative but to rely on his captures/guardians to provide such care. As the United States Supreme Court explained in *Farmer*, a prisoner "need not show that [the] prison official acted or failed to act believing that harm actually would befall [the] prisoner to prove a violation of his Eighth Amendment right]; it is enough [for the prisoner to show] that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. All defendants knew of the plaintiff's underlying health problems with his immunity deficiency along with the dynamics of the possibility of cancer being a possibly cause of the plaintiff's symptoms of his inability to urinate without pain and blood in it.

On its face, and for good cause, then this is a meritorious case.

Respectfully submitted,

*/s/ Lonnie Thompson*

Lonnie Thompson, pro-se
# 640-614
Richland Correctional Institution
Post Office Box 8107
Mansfield, OH 44901

8

## CONCLUSION

For the foregoing reasons, the Plaintiff prays that he has shown good cause and requests that this Honorable Court grants this Motion In Support of The Appointment of Counsel.

*[signature]*
Lonnie Thompson, pro-se
# 640-614
Richland Correctional Institution
Post Office Box 8107
Mansfield, OH 44901

## CERTIFICATE OF SERVICE

I, Lonnie Thompson do certify and swear under the penalty of perjury that the foregoing Motion For The Appointment of Counsel was mailed via the Richland Correctional Institution's inmate mailbox to the Ohio Attorney General Office located at 30 E. Broad Street, 23rd Floor, Columbus, OH 43215 on this 05th day of March, 2024.

*[signature]*
Lonnie Thompson, pro-se
# 640-614
Richland Correctional Institution
Post Office Box 8107
Mansfield, OH 44901

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

LONNIE THOMPSON

Plaintiff,

v.

HENSLEY, et. al.,

Defendants.

Case No. 1:23-cv-01656

JUDGE PAMELA A. BARKER

MAGISTRATE JUDGE JAMES E. GRIMES. JR.

## MOTION FOR THE APPOINTMENT OF COUNSEL

Now comes the Plaintiff, Lonnie Thompson, pursuant to §1915, requests this Honorable Court to appoint counsel in this case to represent him in litigation for the following reasons:

1. The plaintiff cannot afford counsel.

2. The issues in this case are complex and will require expert witness and/or testimony.

3. The plaintiff has little to no knowledge of the law as it pertains to Federal law.

4. The plaintiff has written to four (4) different attorneys requesting if any one of them could possibly take on my case. (Attorneys Ari M. Goldstein, 571 East 185th Street, Cleveland, OH 44119, Attorney Steven M. Goldberg, 31300 Solon Road, Solon, OH 44139, Paul Mancino III, 100 American Road, Brooklyn, OH 44144 and Attorney Paul Mancino 1280 W. 3rd St Cleveland, OH 44113-2098. I have not heard back from any of the attorneys.

5. There are a number of defendants involved in this case and this litigation centers around the technical and detailed aspects of a medical harm done to the plaintiff.

Wherefore, the plaintiff requests this Honorable Court to grant this Motion for The Appointment of Counsel to represent the plaintiff.

Respectfully submitted,

_Lonnie Thompson_
Lonnie Thompson, pro-s

1

## DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION
## FOR THE APPOINTMENT OF COUNSEL

Lonnie Thompson states:

1. I am the plaintiff in the above-entitled case. I make this Declaration In Support of my Motion For Appointment of Counsel.

2. The Complaint in this case alleges that the plaintiff was subjected to pain and suffering, deliberate indifference, negligence, wanton disregard for my health and wellbeing by the hands of the defendants named in this case. That all defendants through their actions and/ or inactions by direct and /or indirect participation of the failure to treat the plaintiff's medical serious need for medical attention which is a violation of the 8th amendment.

3. This is a very complexed, medically technical case which contains several different legal claims, with each claim involving a different set of defendants.

4. This case involves a great degree of medical issues which will require a medical expert's testimony.

5. The plaintiff demands a jury trial.

6. This case will definitely require discovery of documents and depositions of a number of witnesses.

7. The plaintiff only has a General Equivalent Diploma.

8. The plaintiff has a very limited access to the needed legal materials due to the restricted amount of time available to inmates at the Richland Correctional Institution's legal library.

9. As set forth in the Memorandum of Law submitted with this motion, these facts along with the legal merits of plaintiff's claims support the Appointment of Counsel to represent the plaintiff and should be granted in the interest of justice.

Wherefore, the plaintiff hopes to have shown good cause and request that this Honorable Court grants this motion.

Pursuant to 28 U.S.C. §1746, I Lonnie Thompson declare under penalty of perjury that the foregoing is true and correct.

Executed on: 03/05/2024

Signature: *[signed]*

2

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR THE APPOINTMENT OF COUNSEL

**STATEMENT OF THE CASE:**

This is a civil rights case filed under 42 U.S.C. §1983 by a state prisoner and he is asserting claims for the denial of immediate and effective medical treatment when it was medically necessary and a serious need for medical care.

The plaintiff seeks damages on all claims and a preliminary injunction to have the plaintiff receive immediate cancer treatment without further or future delays and the continuing scheduling conflict in which the plaintiff continues to suffer with pain from the complications of Bladder and Prostate cancer. All defendant(s) (Hensley, Newland, Ojukwu and Cardaras) changed the doctors' (urologist and the oncologist) medical orders. The doctors ordered the dietary supplement "Ensure" which was totally disregarded by the defendants and the plaintiff was not given any dietary supplement to help maintain and keep the plaintiff's weight and nutritional value. This was and is a violation of the plaintiff's 8th Amendment.

The defendants have a custom and routine of either refusing to prescribe what the outside hospital doctor have ordered or will generally prescribe what they believe is necessary for the plaintiff's care. The defendants would change the doctor orders from the pain medicine of "Ultram" to the generic drug of "Tylenol" or "Ibuprofen". Neither one of these over the counter medicines help to relieve any of the plaintiff's pain or suffering. Not that the prescribed medicine that the surgeons have ordered are not available at the institution, but due to the defendant having their own policy to not give inmates pain medicine due to the formulary requirements authorization needed by the Department of Rehabilitation and Correction's policy on Class I and II scheduled drug class. The defendants were all aware of the plaintiff's health already being compromised by an underlying immune system deficiency due to other medical ailments and should have known that the plaintiff

3

had a serious medical health problem. Complying with a doctor's prescription or treatment plan is a ministerial function, *not a discretionary* one. See *Estate of Burks Ross*, 438 F.2d 230, 235 (6th Cir. 1971).

The defendants of the Mansfield Correctional Institution medical staff have and had a track record of not issuing doctor prescribed pain medicine when the plaintiff was incarcerated there between October, 2021 through October, 2022 of procrastinating and prolonging treatment when it came to inmate health care. Regardless of what doctor ordered any type of pain medicine, it would be changed even when the medicine was available in the institutional pharmacy. There was always a cost cutting budget saving treatment plan more convenient than to spend money on inmate health care to save the State of Ohio money when it came to medical treatment especially of any type of cancer treatment. Initially, "[t]he proposition that deliberate indifference to a prisoner's medical needs can amount to a constitutional violation has been well-settled since *Estelle* in 1976." *Parsons*, 491 F. App'x at 602. Furthermore, we have already noted that this Circuit's precedent is clear that neglecting a prisoner's medical need and interrupting a prescribed plan of treatment, even for a relatively short period, can constitute a constitutional violation. See *Terrance*, 286 F.3d at 844-45; Comstock, 273 F.3d at 702; *Boretti*, 930 F.3d at 1154.

The preliminary injunction would protect the plaintiff against further and future failures of medical care and treatment.

The Complaint alleges that the plaintiff was denied medical treatment that would have caught the tumor before it had a chance to mutate and to become cancerous. Had the defendant's (Hensley, Newland and Ojukwu) taken a more aggressive and a thorough investigation into the plaintiff's health concerns, the tumor would not have become cancerous with an early detection and prevention regiment. It is a known medical fact that any type of cancer treatment or care for cancer is expensive

4

and costly to the State of Ohio and Ohio's Department of Rehabilitation and Correction's medical budget. It is routinely acceptable to prolong treatment for inmates who have cancer, due to cost, and to just let nature take its' course than to give an "all hands on deck" to fight cancer when it comes to prisoners. The cost outweighs the benefits of the treatment and the value of an inmate's life.

The plaintiff was informed by both doctors, (urologist and oncologist) that when the plaintiff inquired to both doctors, they informed the plaintiff that tumors do not enter into an individual's body cancerous. They become cancerous if the tumor cells are left alone and allowed to grow undetected and the tumor cells mutate into becoming cancerous. That detection can be easily discovered by a biopsy of the suspected organ or area. It also has a number of signs and symptoms that can alert a physician by having bloody urine, painful urination, high concentrations of proteins and ketones in ones' urine and/or the PSA levels in a blood test are elevated. The doctors also informed the plaintiff that by reviewing his medical records at the upstart of his pain and complaining for over a year and a half (1 and ½), this was an adequate amount of time for the tumors to mutate and to become cancerous when allowed to sit for that long. When the plaintiff was experiencing and having all of these symptoms the defendants kept deciding that the plaintiff only had Urinary Tract Infections. This was true but the plaintiff had over five (5) UTI's in a time span of six (6) months. Also being prescribed antibacterial medicine which hardly if ever, cleared up the UTI's but the painful urinations, blood in the urine and high counts of protein and ketones in all the blood and urine tests continued to advance upwards in elevation for obvious reasons. The reasons that no medical staff at the Mansfield Correctional Institution wanted to investigate nor research further. Which ended up leading to the Plaintiff having Bladder and Prostate cancer.

What doctor would continue to prescribe the same medicine or treatment that was not improving, curing or working towards solving the medical problem with the plaintiff. That would be

5

a fruitless endeavor to continue on the same path of failure.

## ARGUMENT

## WHY THE COURT SHOULD APPOINT COUNSEL FOR THE PLAINTIFF

As to why this Honorable Court should appoint counsel to the plaintiff. The plaintiff is an indigent litigant, which the court knows due to the fact that the plaintiff was granted informa pauperis and the plaintiff is grateful. If the Court should take into consideration the factual complexities of this case and the inability of the plaintiff being indigent and cannot investigate the facts, the existence of conflicting testimony to be established in this case and to navigate the legal minefields unassisted or unaided with an attorney would be suicidal for the plaintiff to even try to take on the legal aspects of fighting this case without legal representation. The defendants in this case have college degrees in the medical field which is the basis of this foundation in this dispute.

1. **Factual Complexity:** The plaintiff alleges that there are several defendants that denied him serious medical attention for a serious medical need by not providing him the necessary and significant medical care to deduce and the diagnosis needed to prevent his eventually having Bladder and Prostate Cancer. This was not due to the defendant not having the necessary equipment, medicine or even their training, but to their deliberate indifference, their wanton disregard to the plaintiff's health and safety.

2. **The Plaintiff's Ability and Inability to Investigate:** The Plaintiff is a prisoner and a ward of the State of Ohio and the Ohio Department of Rehabilitation and Correction and has no ability to investigate the facts of this case thoroughly. The Plaintiff has been transferred from the institutions where the harm happened to him. Therefore, the Plaintiff has no way to review medical records that are kept in storage and control of the defendants (gate keepers of records) that are the gate keepers in this case.

6

3. **Conflicting Testimony:** The Plaintiff's account of his medical mistreatment and harm done to him will be squarely in conflict with the statements of the defendants and surely will have to have a professional individual capable of litigating these facts from fiction. To be able to differentiate the difference in the laws of the Court and to secure an equal, fair and legal representation for the Plaintiff. The existence of these credibility issues should support the granting and approval the Appointment of Counsel for the Plaintiff.

4. **The ability of the Indigent Prisoner to Present His Claim:** The ability of the indigent prisoner with no legal training and with very limited access to the legal law library. Access to the law library is limited due to the many factors here at the Richland Correctional Institution from the institution not having enough staff member, (Correctional Officers) to cover the post of the legal law library for security purposes. This institution is going through updates as far as construction being done on the inmate chow hall, which means that it takes a lot longer to feed the total population instead of the meals being done within an hour and a half (1½) now takes approximately two (2) to two and one half hours to feed the population. This extra time cuts into the daily operations of the institution. There is no inmate movement other than to feed the meals. There is no educational school, no inmate passes to go anywhere other than medical, no inmate movement to any non-essential institutional jobs. No movement, Period! There are Heavy Construction Equipment that has to be monitored at all times when in and on the institutional grounds. This construction is estimated to last for a minimum of one (1) year. Therefor access to the law library will continue to be very, very limited for inmates to gain any access to legal materials to help ones' self.

5. **Legal Complexity:** With the number of defendant involved in this case, one whom is in a Supervisory Official position and the medical field presents a complex and technical issues of determining which defendants were sufficiently involved in the constitutional violations to be held accountable and liable for the harm done to the Plaintiff. In addition, the Plaintiff has asked for a jury trial, which requires much greater legal skill and understanding of the law that the Plaintiff has or can develop for this case and to have a fair chance at receiving justice.

6. **Merits of the Case:** The Plaintiff's allegations, if proven, clearly would establish a constitutional violation against the defendants of the 8th Amendment of the U.S. Constitution.

7

No prisoner should be denied medical treatment or pain medicine when the defendants knows of the sufficiently serious risk of harm to the prisoner when there is a serious medical need for medical attention. Especially when the defendants have complete and total control of this medically needed treatment and medicine, in which the Plaintiff being a ward of the State of Ohio and of the Ohio Department of Rehabilitation and Correction. The Plaintiff has no other alternative but to rely on his captures/guardians to provide such care. As the United States Supreme Court explained in *Farmer*, a prisoner "need not show that [the] prison official acted or failed to act believing that harm actually would befall [the] prisoner to prove a violation of his Eighth Amendment right]; it is enough [for the prisoner to show] that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. All defendants knew of the plaintiff's underlying health problems with his immunity deficiency along with the dynamics of the possibility of cancer being a possibly cause of the plaintiff's symptoms of his inability to urinate without pain and blood in it.

On its face, and for good cause, then this is a meritorious case.

Respectfully submitted,

Lonnie Thompson, pro-se
# 640-614
Richland Correctional Institution
Post Office Box 8107
Mansfield, OH  44901

## CONCLUSION

For the foregoing reasons, the Plaintiff prays that he has shown good cause and requests that this Honorable Court grants this Motion In Support of The Appointment of Counsel.

*[signature]*
Lonnie Thompson, pro-se
# 640-614
Richland Correctional Institution
Post Office Box 8107
Mansfield, OH 44901

## CERTIFICATE OF SERVICE

I, Lonnie Thompson do certify and swear under the penalty of perjury that the foregoing Motion For The Appointment of Counsel was mailed via the Richland Correctional Institution's inmate mailbox to the Ohio Attorney General Office located at 30 E. Broad Street, 23rd Floor, Columbus, OH 43215 on this 05th day of March, 2024.

*[signature]*
Lonnie Thompson, pro-se
# 640-614
Richland Correctional Institution
Post Office Box 8107
Mansfield, OH 44901

9