IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**FILED**

**JUN 24 2025**

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

LONNIE THOMPSON,                    :

    Plaintiff,                      :   Case No. 1:23-cv-01656

                                     :

    -vs-                            :   Honorable Judge Pamela A. Barker

                                       :

JULIE HENSLEY et al.,               :   Honorable Magistrate Judge James
                                       :   E. Grimes Jr.

    Defendants.                     :

---

## PLAINTIFF'S MOTION IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

---

    Now comes the Plaintiff, Lonnie Thompson, pro-se who respectfully files this Motion In Opposition To Defendant's Motion To Dismiss. The plaintiff respectfully moves this Honorable Court to deny the Defendant's Hensley, Newland, Dr. Ojukwu, Cardaras, Wheeler and Cornwell (here known as the Defendants) Motion To Dismiss.

    A Memorandum In support of this Motion is attached.

Respectfully submitted,

Lonnie Thompson, pro-se
# 640-614
Richland Correctional Inst.
Post Office Box  8107
Mansfield, OH  44901

## MEMORANDUM IN SUPPORT

I.  STATEMENT OF THE FACTS:

The Complaint states that the Defendants, Hensley, Newland, Dr. Ojukwu, misdiagnosed the Plaintiff's Bladder and Prostate Cancer from the time the Plaintiff was incarcerated at the Mansfield Correctional Institution up to the time the plaintiff was transferred to the Ross Correctional Institution in October, 2022.  Then when the plaintiff was transferred to the Ross Correctional Institution, the plaintiff was immediately seen by the nurse practitioner, the plaintiff was given the necessary test by way of an biopsy which eventually was verified to have cancer of the bladder and prostate.  The time in which the plaintiff was not diagnosed under the care of the health care providers at the Mansfield Correctional Institution, which included the three (3) defendants, Dr. Ojukwu, nurse practitioner Newland and health care administrator Hensley.  The time span of over one (1) year of complaining by the plaintiff, Lonnie Thompson which included blood in his urine, very high concentrations of proteins and ketones in the plaintiff's system.  Key characteristics of a more serious problem other than just a minor urinary tract infection as the defendants claimed as the major problem with the plaintiff.  Which the defendants should have known with their training in the field of medicine, but decided to take the short cut in investigating the plaintiff severe pain and suffering.

That the defendants (all of the health care providers) knew of the high risk the plaintiff's was already in due to his prior and continued immune deficiency with his immune system compromised.

2

With the plaintiff being transferred to the Ross Correctional
Institution in October, 2022 up to October, 2023 under the direct
medical care of Defendant Cardaras,also having the prior medical
history knowledge of the plaintiff's underlying health problems with
his immune deficiency, knew of the high risk factors involved with
not following the Urologist and Oncologist's doctor ordered pre-
scriptions for the pain medication, "Ultram" and the dietary supple-
ment "Ensure" for weight gain and the benefits of maintaining not
just body weight but also the nutritional value of the dietary supple-
ment provided.

Everyone of the defendants knew of this greater possibility of
the harm to the plaintiff by denying him any prescribed medication
or treatments deemed necessary by the specialists, (Oncologist and
Urologist).  Defendant Cardaras knew of these orders and disregarded
fulfilling her obligations as a nurse practitioner and her sworn
Hipocratic Oath.  All defendants not only violated the plaintiff's
8th and 14th Amendments of the United States Constitution, but their
Hippocratic Oath.

From October, 2023 to the present, when the plaintiff was trans-
ferred to the Richland Correctional Institution and under the health
care of the defendants Wheeler and Cornwell violated the plaintiff's
8th and 14th Amendment of the United States Constitution by continu-
ing to deny the plaintiff doctor ordered medications.  As stated
in this response, defendant Wheeler and Cornwell knew of the plaintiff's
higher risk concerning his already compromised immune system from
prior history of his immune deficiency.  That for the defendants to

3

state that they had no prior knowledge of the harm that could and did happen to the plaintiff is implausible and unthinkable.

That the defendants would have this court believe that the prescribed medications and treatments from the specialist were of a discretionary one and not a ministerial function.

A.  FACTS AGAINST DEFENDANT JULIE HENSLEY

The plaintiff state facts that from October, 2021 through October, 2022, Defendant Hensley did violate the Plaintiff, Lonnie Thompson's Eighth and Fourteenth Amendment rights of the United States Constitution to be free of cruel and unusual punishment in that as a Health Care Administrator of the Mansfield, Correctional Institution, she was aware that the plaintiff, Thompson was continuously experiencing bloody and painful urinations, having urinary tract infections, that all of the urine tests showed high concentration levels of blood, protein and ketones in all tests of the plaintiff's urine and blood. The plaintiff had a stupendus amount of warning signs that the defendant Hensley should have known that there was a much more problematic situation going with the plaintiff's health with all of his tests coming back with higher and alarming results.  Results that should have placed Defendant Hensley on alert.

Defendant Hensley knew that Plaintiff Thompson had numerous sick call complaints, even writing institutional grievances on the other defendants concerning his not receiving care for his health problems. The fact that Defendant Hensley chose to ignore any and all concerns of the plaintiff's health care, even going as far as stating to the plaintiff that he was anal-retentive concerning his possibility of having bladder or prostate cancer.

4

Defendant Hensley knew of the harm that the plaintiff would be in knowing his medical history of having his immune system already compromised by his diagnosis of the human immune deficiency virus. There is no way that as the Health Care Administrator of the Mansfield Correctional Institution, that she did have knowledge of the higher risk factor that the plaintiff was in having this knowledge. It should have put Defendant Hensley on alert of this chance that the plaintiff was in medical physical distress with the complaining of his pain and suffering. This was known by the Defendant Hensley due to the fact that she would be and was the individual who heard all medical complaints before they were either solved or elevated up to a grievance.

Therefore, Defendant Hensley can not say or swear to the fact that she was not say that she was not involved or aware of the plaintiff's concerns or his medical history. She totally disregarded all protocol and policy in her responsibility to investigate and follow up on the plaintiff's complaints instead of dismissing them as an anal-retentive problem.

B.    FACTS AGAINST DEFENDANT NEWLAND

The complaint states the facts that between the dates of October, 2021 through October, 2022 Defendant Newland, a nurse practitioner at the Mansfield Correctional Institution, violated the plaintiff, Thompson's Eighth and fourteenth Amendments rights of the United States Constitution to be free of cruel and unusual punishment in that she was well aware of the plaintiff's continuously complaining of experiencing bloody and painful urinations, having urinary tract infections and experiencing painful bowel movements. She knew of

5

the plaintiff's medical history of his immune deficiency being compromised by thisease and the higher risk factors that there could be and was later diagnosed as bladder cancer and prostate cancer by other health care providers at another institution.

Defendant Newland, along with other medical colleagues at the Mansfield Correctional Institution failed to properly diagnose, which lead to the plaintiff having said cancer.  Defendant Newland prolonged requesting for the correct and obvious preventive measures to investigate by requesting and ordering tests to either clarify the plaintiff's not having cancer or to prove that the plaintiff did not have cancer. Defendant Newland did no more than basic testing even though she knew the plaintiff was a greater candidate who met the requirements for a further and thorough investigation as to why the plaintiff's urine and blood test all continued to come back with higher and higher positive results of blood, protein and ketones in his tests.  Results that should have placed Defendant Newland on alert as to that there was a greater problem existing with the plaintiff's complaining and his concerns.

Defendant Newland not only disregarded the plaintiff's health and well being but she disobeyed her Hippocratic Oath.  Defendant Newland, with her training in the medical field, should have known and did know that further tests and treatment should have been performed on the plaintiff to eliminate any and all possibilities of the plaintiff having cancer.  She chose not to follow up on any of the possibilities of something other than urinary tract infections.

Defendant Newland disregarded the plaintiff's sick call and doctor calls of his complaining and even when the plaintiff wrote

6

an institutional grievance on Defendant Newland, there still wasn't
any further investigation as to why the plaintiff was not given
proper medical care. Defendant Newland knew of the pain and suffer-
ing the plaintiff was going through. Her direct and indirect involve-
ment was an deliberate indifference was that she knew of the plaintiff's
medical history and did nothing to prevent the cancer. Even when
there was a time span of approximately twelve (12) months this could
have diagnosed. The harm caused is evident with the result of the
plaintiff having cancer, which could have and should have been detected
to prevent.

C. FACTS AGAINST DEFENDANT OJUKWU

The complaint states the facts against Defendant Dr. Ojukwu from
October, 2021 throughout up to October, 202, a physician at the Mans-
field Correctional Institution did violate the Plaintiff, Lonnie
Thompson's Eighth and Fourteenth Amendment rights of the United States
Constitution to be free of cruel and unusual punishment. That Defendant
Ojukwu knew of the high risk of harm that could be if the plaintiff
was not given the correct and immediate medical diagnosis for his
ailment. Which ended up being cancer of the bladder and prostate for
the plaintiff. Defendant Ojukwu knew of the plaintiff's immune
deficiency due to the human immune deficiency virus.

Defendant Ojukwu had access to every medical record within the
Department of Rehabilitation and Correction, in the State of Ohio,
concerning the plaintiff's medical history records. But Defendant
Ojukwu chose to ignore the repeated complaints or concerns of the
plaintiff's health. Defendant Ojukwu no more investigate the plain-
tiff's medical concerns than to repeatedly prescribe medication that

7

neither cured or corrected the plaintiff's ailments. Defendant Ojukwu, being medically trained as a physician, would have and should have known that with the blood, urine and complaints were early warning indicators that something more serious was wrong with the plaintiff other than just mere urinary tract infections.

Defendant Ojukwu repeatedly disregarded his Hippocractic Oath by not totally investigating further into the plaintiff's health concerns when he knew that the plaintiff's health was not improving but instead, started to decline. These were signs that any experienced physician would have realized and would have taken steps to correct this error. An error that became and still is life threatening for the plaintiff.

Defendant Ojukwu should have given the plaintiff the benefit of doubt and requested that the plaintiff be seen by a specialist. Not after the plaintiff had approximately (6) six urinary tract infections within a six (6) month time span. This showed Defendant Ojukwu's direct deliberate indifference towards the plaintiff and his health concerns.

Not including the facts that the plaintiff's urologist and his oncologist informed the plaintiff that this tumor was festering inside for over a one (1) year period. Which could have been prevented from becoming cancerous had early detection been sought by the defendants once it was seen that all blood and urine tests were coming back highly elevated each time. The defendants chose to pro-long more advanced tests but decided to procrastinate a more in-deepth solution to find out as to why the plaintiff had complications with his urination.

D. FACTS AGAINST DEFENDANT CARDARAS

The complaint states the facts between October, 2022 to August,

2023, that defendant Cardaras, a nurse practitioner at the Ross Correctional Institution, did violate the plaintiff, Thompson's Eighth and Fourteenth Amendment rights of the United States Constitution to be free of cruel and unusual punishment. The complaint states the facts that defendant Cardaras was aware of the plaintiff's medical history and of the immune system of the plaintiff's being compromised with complications of the human immunodeficiecy virus. That this was not a newly diagnosed health problem. Defendant Cardaras knew that with any deviations in the prescribed doctor ordered medications would not just be against her Hippocractic Oath, but cause the plaintiff physical harm also.

Defendant Cardaras knew that following doctor ordered prescribed medicine and/or medical treatments is not a discretionary decision, but a ministerial function. By denying the plaintiff doctor ordered dietary supplement "Ensure" and doctor prescribed pain medicine, "Ultram", defendant Cardaras knew of the harm she caused the plaintiff. After all, the plaintiff was and still is a high risk candidate for any and all infections, weight loss and complications due to his continued cancer treatments with chemotherapy treatments.

It is quite obvious that none of defendants follow doctor orders.

E.  FACTS AGAINST DEFENDANT WHEELER

The complaint states the facts that between October, 2023 to the present day of this motion, that defendant Wheeler, a nurse practititioner at the Richland Correctional Institution violated the plaintiff, Thompson's Eighth and Fourteenth Amendment rights of the United States Constitution to be free of cruel and unusual punishment.

9

As with all of the defendants, defendant Wheeler did know and was aware of the plaintiff's health problems and the higher risk possibilities of the life threatening situations that the plaintiff could be in. Especially by her not following the instructions ordered by the specialists, (urologist and Oncologist) for pain medications and dietary supplements. Once again, defendant Wheeler knows of the plaintiff's health problems in the aforementioned statements concerning the plaintiff's medical history and the complications.

In not following said doctor orders, defendant Wheeler deliberately demonstrated her either direct deliberate indifference or her incompetence as a health provider. Either way, defendant Wheeler violated the plaintiff's rights to be free of cruel and unusual punishment. Defendant poccessed prior knowledge of the plaintiff's health concerns but chose to defy doctor orders and her sworn oath to the Hippocratic Oath she took in becoming a nurse practititoner.

Complying with a doctor's prescription or treatment plan is a ministerial function, not a discretionary one. Defendant Wheeler even informed the plaintiff that she did not have to follow the doctor orders and that she was not going to give the plaintiff the ordered pain medicine nor the dietary supplement.

F.  FACTS AGAINST DEFENDANT CORNWELL

The complaint states the facts as to the dates between October, 2023 and continuing to the present time, that Defendant Cornwell, a nurse practitioner at the Richland Correctional Institution, located at 1001 Olivesburg Road, Mansfield, OH, did and continues to violate the plaintiff, Lonnie Thompson's Eighth and Fourteenth

10

Amendment rights guaranteed by the United States Constitution to be free of cruel and unusual punishment. That defendant Cornwell knew of the high risk that the plaintiff is in due to the continued cancer treatment for his bladder and prostate. The plaintiff is being treated with chemotherapy of the radioactive medicine, Bacillus Calmette-Guerin. Defendant Cornwell knows or should know that if the plaintiff does not receive said doctor ordered prescribed medication that she could and has caused harm to the plaintiff. Not only has defendant Cornwell disobeyed medical orders from the Urologist and the Oncologist, but the Hippocratic Oath she took in becoming a nurse practititoner

Her direct disregards towards the plaintiff's health care is not only unacceptable but was and is unprofessional as a nurse practitioner. To not follow doctor ordered prescriptions is a ministerial function, not a discretionary one. Defendant Cornwell's decision to not adminiter the pain medication "Ultram" and the dietary supplement "Ensure" was a conscious direct deliberate indifference decision towards the plaintiff. There is no way that defendant Cornwell can say that she was not aware of the possible harm when she decided to not follow doctor orders for the plaintiff's medication and his treatments.

II. LAW AND ARGUMENT

The complaint that the Plaintiff, Lonnie Thompson described within does state a claim for relief due to the facts presented throughout the complaint against all defendants within the complaint. The complaint includes all facts to state a claim for relief that is plausible on its face, and does so with each element of the claim.

11

II. LAW AND ARGUMENT

The complaint that the Plaintiff, Lonnie Thompson described with his complaint does state a claim in which relief is established against every defendant in the complaint.

The complaint includes and establishes facts that are plausible on its face, and does so with each elements of the claim.

In deciding a Motion to Dismiss, the Court is required to "accept the allegations of the complaint as true and construe those allegations and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff." See Kay v. Bemis, 500 F.3d 1214, 1217 (10th Cir. 2007) quoting Gaines v. Stenseng, 292 F.3d 1224, 1217 (10th Cir. 2002)) See Bell Atlantic v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1995 (2007), (Stating that the decisions on such motion to dismiss rest "on the assumption that all allegations in the complaint are true"); Luney v. SGS Automotive Services, Ins., 432 F.3d 866, 867 (8th Cir. 2005); Roth Steel Products, v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1982)(12)(b)(6) Motion to Dismiss is directed soley to the complaint and any exhibits attached to it).

The complaint clearly establishes the direct and/or indirect elements needed to past the subjective and objective prongs necessary for the requirements of the deliberate indifference clause violated by each defendant through their actions and/or inactions

Although the counsel for the defense makes the requirements for a claim to proceed clear, they fail to see that the plaintiff has not been afforded the right to discovery. The plaintiff's well-pled factual allegations must "suffice to 'raise a reasonable expectation that discovery will reveal evidence' and 'allo[w] the court to draw

12

the reasonable inference that the defendant is liable for the misconduct alleged."' Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 46, 131 S.Ct. 1309, 179 L.Ed.2d 398(2011). (alteration in original) [*9] (quoting Twombly, 550 U.S. at 544; Iqbal v. Ashcroft, 556 U.S. 662, 678, 129 S.Ct. 1937, 173L.Ed. 2d 868 (2009). Because Hullum is representing himself, the Court construes the Amended Complaint liberally, holding it to "less strigent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551, U.S. 89, 94, 127 S. Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting Estelle v. Gamble, 429 US. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d (1976)). Also see Stubbs v. Henry, 2025 U.S. Dist. LEXIS 105688.

Counsel for the defendants state that the plaintiff has failed to provide actual and factual proof of any violations of the Eighth and Fourteenth Amendment rights. All defendants have failed to provide doctor ordered treatments for the plaintiff's cancer care and dietary supplements along with pain medications.

Counsel for the defendants state and use case law Rhinehart v. Scutt, 894 F.3d to state that the plaintiff did not even suggest that Defendant Newland consciously expose him to an excessive risk of serious harm. How could this even be presented to the Court when the plaintiff in his complaint repeatedly complained of painful urination, bloody urine, painful stomach pain, inability to have bowel movements? Defendant Newland along with every defendant has direct knowledge of the plaintiff's immune system complications.

As stated prior, with every defendant having this knowledge, that the plaintiff is automatically placed in a higher catagory of

13

a greater and obvious fact that he could have cancer and eventually did and still has cancer of his bladder and prostate. A fact, not a misdiagnosed possibility.

The counsel for the defendants state in their Motion to Dismiss, that based on the numerous health provider visits, that a jury could not conclude that the plaintiff was left untreated. This statement could be interpreted as to saying one could put a bandage on a gun shot wound and expecting the bandage to stop the bleeding. Then to say the person received medical care. Medical care that was unrealistic, ineffective and very insufficient. But yet the counsel for the defendant would say that the person received some care.

In real life, this definition of medical care would be criminal to say the least. But the counseld for the defendant would have this Court believe that with the facts stated within the plaintiff's complaint could not succeed in the eyes of a jury.

I would only ask of this Honorable Court is to deny the defendants Motion to Dismiss and let the litigation of this case proceed forward.

The defendants are not immune for their violations of the plaintiff's Constitutional rights to be free of cruel and unusual punishment in their individual capacity.

Not one of the defendants in this litigation can swear that not one individual had prior knowledge of the harm or the risk of harm that the plaintiff was in due to the plaintiff's medical history and his pre diagnosis and post diagnosis of bladder and prostate cancer. Knowing this fact should have placed every defendant on alert to that harm.

14

Harm that any layperson would be able to comprehend that there is a problem. For a trained medical individual to claim that he or she did not know of the possible harm to the plaintiff's health would be an insult to one's intelligence to believe that a medically trained individual would not see such harm.

III. CONCLUSION

Wherefore, the plaintiff request respectfully of this Honorable Court to deny the defendant's Motion to Dismiss for the reasons stated in this Memorandum in Support and that this Court set a date for Discovery in this litigation.

The Plaintiff would also request that the medical sensitive information in the Plaintiff's medical records concerning the status of his immune deficiency be redated from public access of viewing by the public. That this requirement be met according to the Federal Privacy Act and the guidelines of the Health Insurance Portability and Accountability Act (HIPPA).

That this Honorable Court set a date for Discovery to move forward in litigation.

Respectfully submitted,

Lonnie Thompson, pro-se

CERTIFICATE OF SERVICE

I, Lonnie Thompson, do certify that a true acopy of the Plaintiff's Motion in Opposition to Defendant's Motion to Dismiss was sent via by mail to the Ohio Attorney General Office, 30 East Broad Street, 23rd Floor, Columbus, OH 43215 on this 12th day of June, 2025

Lonnie Thompson, pro-se

15