IN THE U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LONNIE THOMPSON, | ) | CASE NO. 1:23-CV-01656 |
| Plaintiff, *pro se*, | ) | JUDGE PAMELA A. BARKER |
| v. | ) | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| JULIE HENSLEY, | ) | FILED |
| Defendants. | ) | DEC 04 2025 |
| | | CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF OHIO |

## MOTION FOR RECONSIDERATION

Comes now, Lonnie Thompson, Plaintiff, *pro se*, who respectfully requests this Honorable Court reconsider the dismissal of the above-captioned case in an Opinion & Order entered on October 30, 2025. Plaintiff makes this Motion pursuant to Fed.R.Civ.Proc. 59. Rule 59 is appropriate for reconsideration in the presence of error due to having overlooked, disregarded or misapprehended any facts, arguments, or law, or if the initial decision was manifestly unjust. See, e.g., *Davie v. Mitchell*, 291 F. Supp. 2d 573, 634 (N.D. Ohio 2003); *Intera Corp. v Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)

Under Rule 59(e) of the Federal Rules of Civil Procedure, a party may move a court to alter or amend a judgment within 28 days of the judgment's entry. A Rule 59(e) motion applies to the "reconsideration of matters encompassed within the merits of the judgment" entered by the district court. *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 176 (1989). Rule 59 exists so that a court has the power "to rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dept. of Emp't Sec.*, 455 U.S. 445, 450 (1982).

Additionally, any non-final interlocutory order may be revised at any time prior to the entry

1

of a final judgment adjudicating the claims, right and liabilities of all parties. Fed. R. Civ. P. 54(b). This Court's Order [Doc. No. 80] is a non-final interlocutory order and no final judgment has been granted. Therefore, it may be modified at any time pursuant to Fed. R. Civ. P. 54(b). "[M]otions for reconsideration under Rule 54(b) are not subject to the strict standards applicable to motions for reconsideration of a final judgment' under Rules 59(e) and 60(b)." *Am. Canoe Ass'n v. Murphy Farms. Inc..*, 326 F.3d 505, 514-15 (4th Cir. 2003). "Under Rule 54(b), reconsideration is not limited to 'extraordinary circumstance,' as is generally required under Rule 59(e). Rather, the goal is simply to 'reach the correct judgment under law.'" *Matter of Vulcan Constr. Materials, LLC*, 433 F. Supp. 3d 816 (E.D. Va. 2019). "Courts will reconsider an interlocutory order under Rule 54(b) if 'there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent a manifest injustice.'" *Christian v. Altaire Pharms., Inc..*, No. 20-6360, 2021 U.S. App. LEXIS 23751 (6th Cir. Aug. 10, 2021) (quoting *Luna v. Bell*, 887 F.3d 290, 297 (6th Cir. 2018).

The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care under the Eighth Amendment has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. Id. In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. Id. The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004);

2

see also *Phillips v. Roane Cnty.*, 534 F.3d 531, 539-40 (6th Cir. 2008).

The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285 (1976)). An Eighth Amendment deliberate indifference claim against a prison official has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994); *Blackmore*, 390 F.3d at 895. The objective component requires a plaintiff to show the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321 (1991)).

The subjective component requires a plaintiff to show that the actor had "a sufficiently culpable state of mind in denying medical care." *Blackmore*, 390 F.3d at 895 (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). This showing "entails something more than mere negligence" but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Blackmore*, 390 F.3d at 896 (quoting *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)).

Plaintiff must also allege facts that show that the state actor "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). The Sixth

3

Circuit considers the subjective component to be satisfied where a defendant recklessly disregards a substantial risk to a plaintiff's health. *Parsons v. Caruso*, 491 F. App'x 597, 603 (6th Cir. 2012).

## ARGUMENT

### I. STANDARD OF REVIEW

To prevail on a § 1983 claim, Plaintiff must prove both (1) that it was deprived of a constitutional right and (2) that this deprivation was "caused by a person acting under color of state law." *Jones v. Muskegon County*, 625 F.3d 935, 941 (6th Cir.2010). In the context of Plaintiff's claim, even care provided by a private entity does not prevent Plaintiff from establishing the second requirement (i.e., that the defendant is acting under color of state law). "A private entity...that contracts to provide medical services at a [prison] can be held liable under § 1983 because it is carrying out a traditional state function." *Winkler v. Madison Cty.*, 893 F.3d 877, 904 (6th Cir. 2018).

"A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Sharpe v. S.C. Dept of Corr.*, 621 Fed. Appx. 732, 734 (4th Cir. 2015) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). Delaying treatment in the face of significant *pain is harm* sufficient to support a finding of deliberate indifference. See, e.g., *Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir. 1978) (concluding plaintiff had stated a claim for deliberate indifference because a broken arm is an "excruciating injury" and plaintiff was denied treatment for at least eleven hours); *Webb v. Hamidullah*, 281 Fed. Appx. 159, 167 (4th Cir. 2008) (explaining a plaintiff can prevail on a deliberate indifference claim if he can show a delay in treatment resulted in the exacerbation of his medical condition or "frequent complaints of severe pain").

### II. THE COURT'S DECISION DID NOT COMPORT WITH THE APPLICABLE STANDARD OF LAW.

4

The Plaintiff will address his reasons for this Motion for Reconsideration for each Defendant that the Court dismissed from said litigation. *Thompson v. Hensley*, 2025 U.S. Dist. LEXIS 213930 (N.D. Ohio), Doc# 80.

**Defendant Hensley**

Defendant Hensley was at the time of the Plaintiff's incarceration at the Mansfield Correctional Institution, employed as a Registered Nurse and was acting as the Health Care Administrator during the course of Plaintiff's illnesses while housed at the Mansfield Correctional Institution. Plaintiff clearly alleged that Defendant Hensley "either was aware or should have been aware that Thompson was continuously experiencing bloody and painful urinations, having urinary tract infections, that urine tests indicated high levels of blood, protein, and ketones, and that Thompson had numerous nurse and doctor sick calls complaining of the above, among other issues."[1] Id. Instead of addressing Plaintiff's serious medical needs of which she was aware, she "directed derogatory statements towards him such as telling him he was anal retentive." Id. These derogatory remarks made from a Health Care Administrator in itself is enough to give pause, with the end results for the Plaintiff being a life-time bout with fighting cancer.

The complaint plausibly alleged facts showing that (1) the government official violated a plaintiff's constitutional rights, and (2) that this right was clearly established at the time of the violation. As shown in the citations above, the violation of Plaintiff's constitutional rights were demonstrated via clearly "settled law." *District of Columbia v. Wesby*, 583 U.S. 48, 63, 138 S. Ct. 577, 199 L. Ed. 2d 453 (2018)

The continuous misdiagnosis of urinary tract infections and repetitive ineffective treatment

---

[1] Plaintiff's medical history is also positive for Human Immunodeficiency Virus (HIV), which is known to contribute to increased risk of cancer(s). This should be considered for all Defendants in the instant Motion.

5

for urinary tract infections for over a year and telling him there was nothing more to his illnesses led to a delay in the diagnosis of prostate and bladder cancers. It is common knowledge to any lay person that cancer is a painful condition with high rates of death associated with it. *Blackmore*, supra. The delay in treatment and the ongoing, unaddressed pain related to the same were unnecessary. Defendant Hensley, even in light of the facts that the test results did not just indicate simple "urinary tract infections," continued to deny Plaintiff the proper diagnostic testing to ascertain the proper diagnosis and provide the proper treatment, forcing Plaintiff to file a grievance against her. It would also be obvious to a lay person that prolonged, repeated, painful and bloody urinations would require additional testing to fully evaluate Plaintiff's conditions. *Blackmore*, supra. As such is true, this Defendant would not be entitled to qualified immunity, with Plaintiff meeting both the objective and subjective prongs of deliberate indifference.

It could easily be decided by a jury that Defendant Hensley demonstrated deliberate indifference to Plaintiff's serious medical needs. Defendant Hensley's actions/inactions did nothing to alleviate Plaintiff's pain and other symptoms, nor did it lead to the discovery of his cancers. The decision to dismiss the claims against Defendant Hensley was an error of fact and law, and she should be reinstated as a Defendant in the instant case.

**Defendant Newland**

Defendant Newland worked as a Certified Nurse Practitioner who directly provided care to the Plaintiff at Mansfield Correctional Institution prior to Plaintiff's multiple diagnoses of cancer at Ross Correctional Institution more than a year later after his transfer to that facility. Certified Nurse Practitioners have the license and ability to diagnose and treat illnesses under a supervising physician. In Ohio, a nurse practitioner's scope of practice is limited by R.C. 4723.43(C) and R.C. 4723.431, which requires a nurse practitioner to operate "in collaboration

6

with one or more physicians" according to the standard care arrangement entered into with each physician. See also Ohio Adm. Code Ann. 4723-8-01 et seq. (governing scope of practice and requirements for the standard care arrangement). Defendant Newland was aware of Plaintiff's symptoms, his medical reports, diagnostic testing, and the continuous failure of the repeated prescriptions for antibiotics to address Plaintiff's serious medical needs for over a year without any deviation in care despite the lack of Plaintiff's progress. *Thompson*, supra.

The complaint plausibly alleged facts showing that (1) the government official violated a plaintiff's constitutional rights, and (2) that this right was clearly established at the time of the violation. As shown in the citations above, the violation of Plaintiff's constitutional rights were demonstrated via clearly "settled law." *District of Columbia v. Wesby*, 583 U.S. 48, 63, 138 S. Ct. 577, 199 L. Ed. 2d 453 (2018)

Instead of ordering further diagnostic testing to discover the cause of Plaintiff's ongoing serious medical needs, Defendant Newland chose to continue ineffective treatment and "informed [him] that she did not believe that he had cancer." *Thompson*, supra. This was more than mere negligence, but deliberate indifference to serious medical needs; the diagnoses and treatment of Plaintiff's bladder and prostate cancers. Plaintiff clearly stated in his Amended Complaint that Defendant Newland's "actions and lack thereof prompt action caused Thompson unnecessary pain and suffering" and "delayed Thompson's cancer treatment and caused harm." As such is true, this Defendant would not be entitled to qualified immunity, with Plaintiff meeting both the objective and subjective prongs of deliberate indifference.

It could easily be decided by a jury that Defendant Newland demonstrated deliberate indifference to Plaintiff's serious medical needs. Defendant Newland's actions/inactions did nothing to alleviate Plaintiff's pain and other symptoms, nor did it lead to the discovery of his

7

cancers. The decision to dismiss the claims against Defendant Newland was an error of fact and law, and she should be reinstated as a Defendant in the instant case.

**Defendant Dr. Ojukwu**

Defendant Ojukwu was at all times the treating physician while Plaintiff was housed at Mansfield Correctional Institution. In addition to providing direct care to Plaintiff, Defendant Ojukwu was responsible for the oversight of any and all diagnoses and treatment provided by the Certified Nurse Practitioners working under him at the facility. This requires the review of all medical records and treatment provided to Plaintiff while housed at that facility.

Defendant Ojukwu cannot claim ignorance of Plaintiff's serious medical needs, as he was aware, by law (R.C. § 4723.43(C), R.C. § 4723.431 and Ohio Adm. Code Ann. 4723-8-01 et seq.), of Plaintiff's complaints and the ineffective treatments repeatedly provided which did nothing to properly diagnose or treat his cancers for more than a year. Even Defendant Ojukwu's eventual requested consult for evaluation of Plaintiff's prostate gland, which was denied, did not occur until a year after Plaintiff's initial and repeated pleas for care. This act of requesting a consult also occurred after Plaintiff had filed a grievance on this Defendant.

The complaint plausibly alleged facts showing that (1) the government official violated a plaintiff's constitutional rights, and (2) that this right was clearly established at the time of the violation. As shown in the citations above, the violation of Plaintiff's constitutional rights were demonstrated via clearly "settled law." *District of Columbia v. Wesby*, 583 U.S. 48, 63, 138 S. Ct. 577, 199 L. Ed. 2d 453 (2018)

Any lay person knows that to continue the same ineffective treatment for a year in light of non-responsive and worsening symptomatology is more than mere negligence, but would surely

8

be consistent with deliberate indifference.[2] *Blackmore*, supra. This was surely more than mere negligence, but deliberate indifference to serious medical needs; the diagnoses and treatment of Plaintiff's bladder and prostate cancers. As such is true, this Defendant would not be entitled to qualified immunity, with Plaintiff meeting both the objective and subjective prongs of deliberate indifference.

It could clearly and easily be decided by a jury that Defendant Ojukwu demonstrated deliberate indifference to Plaintiff's serious medical needs, both in the provisions of direct care and in the oversight of the Certified Nurse Practitioner for whom he was directly responsible. Defendant Hensley's actions/inactions did nothing to alleviate Plaintiff's pain and other symptoms, nor did it lead to the discovery of his cancers. The decision to dismiss the claims against Defendant Ojukwu was an error of fact and law, and he should be reinstated as a Defendant in the instant case.

**Defendant Wheeler**

Defendant Wheeler was at all times a Certified Nurse Practitioner[3] employed at Richland Correctional Institution, and was directly involved in the treatment of Plaintiff after his transfer to said institution. The Amended Complaint clearly stated Defendant Wheeler "is, or should have been, aware that Thompson has cancer" and "is, or should have been, aware that Thompson continues to experience urination complications, lower back pain, stomach pain, and abdominal pain." *Thompson*, supra. This would have been ascertained by Defendant Wheeler from a review of Plaintiff's medical files, which is required procedure by any clinician prior to initiating or

---

[2] "As Albert Einstein would say—'the definition of insanity is doing the same thing over and over again and expecting different results.'" *Se. Mich. Surgical Hosp., LLC v. Little*, 2023 U.S. Dist. LEXIS 89935 (E.D. Mich.)

[3] The legal standards for Certified Nurse Practitioners were presented under the argument for Defendant Newland, citing to R.C. § 4723.43(C), R.C. § 4723.431 and Ohio Adm. Code Ann. 4723-8-01 et seq., and is incorporated herein by reference.

continuing a course of treatment.

Due to the fact that Plaintiff had been diagnosed with two types of cancer and a course of treatments had been initiated by specialists at the Franklin Medical Center in Columbus by the time he was transferred to Richland Correctional Institution, Defendant Wheeler was required to provide the treatment as ordered.

Any lay person would know that cancer is a painful condition. The medication Plaintiff stated was withheld by this Defendant was "Ultram/Tramadol,"[4] which is a pain medication that was prescribed to address Plaintiff's severe, cancer-related pain. Plaintiff was also prescribed Ensure,[5] which was to provide him additional nutrition due to Plaintiff's difficulty with eating due to his multiple sources of abdominal pain from his cancers and related treatment. Defendant Wheeler would not follow the orders of the specialists and provide Plaintiff with the appropriate treatment as ordered. Any lay person would know that cancer is a painful condition and requires pain management. *Blackmore*, supra. Further, any lay person would know that cancer patients require additional nutrition during the battle against cancer and the recovery from cancer treatment and procedures to support recovery and prevent undue weight loss.

The Court recognized that "[a]n inmate can bring suit under § 1983 for an Eighth Amendment violation 'whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.'" *Thompson*, supra, citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); and also referencing

---

[4] Tramadol is used to relieve moderate to severe pain in adults and children 12 years of age or older. https://medlineplus.gov/druginfo/meds/a695011.html (last accessed July 23, 2023).

[5] Ensure is a supplemental nutrition drink that provides a balance of protein, carbohydrates, and fat, fortified with vitamins. Supplemental Nutrition Drinks: Help or Hype?, Harvard Health Letter (July 2013), https://www.health.harvard.edu/staying-healthy/supplemental-nutrition-drinks-help-or-hype (last visited Aug. 31, 2018).

10

*Murray v. Ohio*, 29 F.4th 779, 786-87 (6th Cir. 2022). Id.

This was surely more than mere negligence, but deliberate indifference to serious medical needs; the deliberate withholding of prescribed medication for treatment of Plaintiff's bladder and prostate cancers and associated symptomatology. As such is true, this Defendant would not be entitled to qualified immunity, with Plaintiff meeting both the objective and subjective prongs of deliberate indifference.

The complaint plausibly alleged facts showing that (1) the government official violated a plaintiff's constitutional rights, and (2) that this right was clearly established at the time of the violation. As shown in the citations above, the violation of Plaintiff's constitutional rights were demonstrated via clearly "settled law." *District of Columbia v. Wesby*, 583 U.S. 48, 63, 138 S. Ct. 577, 199 L. Ed. 2d 453 (2018)

It could clearly and easily be decided by a jury that Defendant Wheeler demonstrated deliberate indifference to Plaintiff's serious medical needs, both in the provisions of direct care in addressing Plaintiff's pain and suffering. The dismissal of Defendant Wheeler was based on the Court's claim that "Thompson's allegations against Wheeler do not include an allegation that her actions caused Thompson to suffer any harm." *Thompson*, supra. "Pain is harm." *Loe, Webb*, supra. The decision to dismiss the claims against Defendant Wheeler was an error of fact and law, and she should be reinstated as a Defendant in the instant case.

**Defendant Cornwell**

Defendant Cornwell was at all times a Certified Nurse Practitioner[6] employed at Richland Correctional Institution, and was directly involved in the treatment of Plaintiff after his transfer to

---

[6] The legal standards for Certified Nurse Practitioners were presented under the argument for Defendant Newland, citing to R.C. § 4723.43(C), R.C. § 4723.431 and Ohio Adm. Code Ann. 4723-8-01 et seq., and is incorporated herein by reference.

said institution. The Amended Complaint clearly stated Defendant Cornwell "is, or should have been, aware that Thompson has cancer" and "is, or should have been, aware that Thompson continues to experience urination complications, lower back pain, stomach pain, and abdominal pain." *Thompson*, supra. This would have been ascertained by Defendant Cornwell from a review of Plaintiff's medical files, which is required procedure by any clinician prior to initiating or continuing a course of treatment.

Due to the fact that Plaintiff had been diagnosed with two types of cancer and a course of treatments had been initiated by specialists at the Franklin Medical Center in Columbus by the time he was transferred to Richland Correctional Institution, Defendant Cornwell was required to provide the treatment as ordered.

Any lay person would know that cancer is a painful condition. The medication Plaintiff stated was withheld by this Defendant was "Ultram/Tramadol,"[7] which is a pain medication that was prescribed to address Plaintiff's severe, cancer-related pain. Plaintiff was also prescribed Ensure,[8] which was to provide him additional nutrition due to Plaintiff's difficulty with eating due to his multiple sources of abdominal pain from his cancers and related treatment. Defendant Wheeler would not follow the orders of the specialists and provide Plaintiff with the appropriate treatment as ordered. Any lay person would know that cancer is a painful condition and requires pain management. *Blackmore*, supra. Further, any lay person would know that cancer patients require additional nutrition during the battle against cancer and the recovery from cancer treatment and procedures to support recovery and prevent undue weight loss.

---

[7] Tramadol is used to relieve moderate to severe pain in adults and children 12 years of age or older. https://medlineplus.gov/druginfo/meds/a695011.html (last accessed July 23, 2023).

[8] Ensure is a supplemental nutrition drink that provides a balance of protein, carbohydrates, and fat, fortified with vitamins. Supplemental Nutrition Drinks: Help or Hype?, Harvard Health Letter (July 2013), https://www.health.harvard.edu/staying-healthy/supplemental-nutrition-drinks-help-or-hype (last visited Aug. 31, 2018).

The Court recognized that "[a]n inmate can bring suit under § 1983 for an Eighth Amendment violation 'whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.'" *Thompson*, supra, citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); and also referencing *Murray v. Ohio*, 29 F.4th 779, 786-87 (6th Cir. 2022). Id.

This was surely more than mere negligence, but deliberate indifference to serious medical needs; the deliberate withholding of prescribed medication for treatment of Plaintiff's bladder and prostate cancers and associated symptomatology. As such is true, this Defendant would not be entitled to qualified immunity, with Plaintiff meeting both the objective and subjective prongs of deliberate indifference.

The complaint plausibly alleged facts showing that (1) the government official violated a plaintiff's constitutional rights, and (2) that this right was clearly established at the time of the violation. As shown in the citations above, the violation of Plaintiff's constitutional rights were demonstrated via clearly "settled law." *District of Columbia v. Wesby*, 583 U.S. 48, 63, 138 S. Ct. 577, 199 L. Ed. 2d 453 (2018)

It could clearly and easily be decided by a jury that Defendant Wheeler demonstrated deliberate indifference to Plaintiff's serious medical needs, both in the provisions of direct care in addressing Plaintiff's pain and suffering. The dismissal of Defendant Cornwell was based on the Court's claim that "Like his allegations against Wheeler, Thompson's allegations against Cornwell do not include any allegation that her actions caused Thompson to suffer any harm." *Thompson*, supra. "Pain is harm." *Loe, Webb*, supra. The decision to dismiss the claims against Defendant Cornwell was an error of fact and law, and she should be reinstated as a Defendant in the instant

case.

### III. Additional considerations

Plaintiff respectfully asserts that the claims against Defendants Wheeler and Cornwell are nearly identical to the claim against Carderas, yet the claim against Carderas was permitted to proceed while the claims against Wheeler and Cornwell were dismissed. With Defendant Carderas having been denied the defense of qualified immunity, Plaintiff avers that Defendants Wheeler and Cornwell should not be able to claim dismissal under the same defense.

### CONCLUSION

Therefore, Plaintiff asserts he has established that his pleadings have met both the objective and subjective requirements of deliberate indifference, and that the named Defendants acted with the required intent consistent with a constitutional violation as the Constitution requires to proceed with a claim under the Eighth Amendment. Plaintiff prays that this Honorable Court will reconsider the judgment at issue and find this Motion to be WELL-TAKEN and GRANT the same with regard to all Defendants in the interests of fundamental fairness and as the ends of justice so require as provided by the United States Constitution.

Respectfully submitted,

Lonnie Thompson, #640-614
Trumbull Correctional Institution
P.O. Box 901
Leavittsburg, Ohio 44430
Plaintiff, *pro se*

## CERTIFICATE OF VERITY AND SERVICE

I hereby certify, under penalty of perjury, that a copy of the foregoing Motion was sent for filing with the U.S. District Court via U.S. Mail on the same day that it was placed in the Trumbull Correctional Institutional mailbox and sent to Counsel for the Defendants, Ohio Attorney General, 30 East Broad Street, 23rd Floor, Columbus, Ohio 43215, this 23rd day of November, 2025.

*Lonnie Thompson*
Lonnie Thompson #640-614