UNITED STATES DISTRICT COURT
FOR THE NORTER DISTRICT OF OHIO
EASTERN DIVISISON

| | | |
|---|---|---|
| LONNIE THOMPSON, | ) | FILED |
| Plaintiff, | ) | DEC 29 2025 |
| | ) | CLERK, U.S. DISTRICT COURT |
| | ) Case No. 23-cv-01656 | NORTHERN DISTRICT OF OHIO CLEVELAND |
| | ) | |
| -vs- | ) HONORABLE JUDGE PAMELA BARKER | |
| | ) | |
| JULIE HENSLEY, et. al., | ) HONORABLE MAGISTRAE JUDGE JAMES E. GRIMES JR. | |
| Defendants. | ) | |

## MOTION FOR APPOINTMENT OF COUNSEL
## PURSUANT TO 28 U.S.C § 1915(1)

Now comes the Plaintiff, Lonnie Thompson, pro-se who respectfully request of this Honorable Court to Grant this Motion For The Appointment of Counsel in the instant case. Pursuant to 28 U.S.C. § 1915(1).

For the reasons stated and put forth in the attached Memorandum in Support of the Plaintiff's Motion For The Appointment of Counsel.

Respectfully submitted,

Lonnie Thompson, pro-se
# 640-614
Trumbull Correctional Institution
Post Office Box 901
Leavittsburg, OH 44430

1

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## MOTION FOR APPOINTMENT OF COUNSEL

This is a civil rights case filed under 42 U.S.C. § 1983 by a state prisoner and the Plaintiff is asserting claims for the denial of immediate and effective medical treatment when it was medically necessary and a serious need for medical care.

The Plaintiff seeks damages on all claims and a preliminary injunction to have the Plaintiff receive immediate cancer treatment without further or future delays and the continuing scheduling conflict in which the Plaintiff continues to suffer with pain from the complications of Bladder and Prostate cancer. All defendants(s) (Henley, Newland, Ojukwu, Cardaras, Wheeler and Cornwell either have changed or are still changing the doctor's (Urologist and the Oncologist) medical and medication orders. The doctors ordered the dietary supplement "Ensure" which was totally disregarded by the defendants and the Plaintiff was not given any dietary supplement to help maintain and keep the Plaintiff's weight and nutritional value. There actions were and still are a violation of the Plaintiff's 8th Amendment right of the United States Constitution.

The defendants have a custom and a routine of either refusing to prescribe medication that are ordered from outside hospital that those doctors have ordered or will generally prescribe what they (institutional prison medical staff) believe is necessary for the Plaintiff's health care regardless of outside doctor orders.

The defendants will would change the doctor orders from the pain medicine of "Ultram" to the generic over the counter pain reliever "Tylenol" or "Ibuprofen". Neither one of these over the counter medicines help to relieve any of the Plaintiff's pain or suffering. Not that the prescribed medicines that the surgeons have ordered are available at the institution, but due to the defendants having their own policy to not give inmates pain medicine due to the formulary requirements authorization needed by the Department of Rehabilitation and Correction's policy on Class I and II scheduled drug class. Every defendant was and is aware of the Plaintiff's health already being compromised by an underlying

2

immune system deficiency due to other medical conditions and should have known that the Plaintiff had a serious medical health problem.

Complying with all doctor's medical prescription and/or treatment plain is a ministerial function, *not a discretionary one.* See Estate of Burks Ross, 438 F.2d 230, 235 (6th Cir. 1971). The defendants of the Mansfield Correctional Institution, Ross Correctional Institution and Richland Correction Institution medical staff have and had a track record of not issuing doctor prescribed pain medicine when the Plaintiff was incarcerated in the above mentioned institutions from October 2021 up to the presence. Procrastinating and prolonging treatment when it came to inmate health care. Regardless of what outside doctors any type of pain medicine, it would be changed even when the medicine was available in the institutional pharmacy. There is always a cost cutting budget saving treatment plan more convenient than to spend money on inmate health care to save the State of Ohio money when it came to medical treatment especially any type of cancer treatment.

Initially, "[t]he propositions that deliberate indifference to a prisoner's medical needs can amount to a constitution violation has been well-settled since *Estelle* in 1976". *Parsons*, 491 F.App'x at 602. Furthermore, we have already noted that this Circuit's precedent is clear that neglecting a prisoner's medical need and interrupting a prescribe plan of treatment, even for a relatively short period, can constitute a constitutional violation. See *Terrance*, 286 F.3d at 844-45; *Comstock*, 273 F.3d at 702; *Boretti*, 930 F.3d at 1154. The preliminary injunction would protect the Plaintiff against further and future failures of medical care and treatment.

The complaint alleges that the Plaintiff was denied medical treatment that would have caught the tumor before it had a chance to mutate and to become cancerous. Had the defendants (Hensley, Newland and Ojukwu) taken a more aggressive and a thorough investigation into the Plaintiff's health concerns, the tumor would not have become cancerous with an early detection and prevention regiment. It is a known medical fact that any type of cancer treatment or care for cancer is expensive and costly to the

3

State of Ohio and Ohio's Department of Rehabilitation and Corrections' medical budget. It is routinely acceptable to prolong treatment for inmates who suffer from cancer, due to cost, and to just let nature take its' course than to give an "all hands on deck" to fight cancer when it comes to prisoners. The cost outweighs the benefits of the treatment and the value of an inmate's life.

The Plaintiff was informed by both doctors, (Urologist and Oncologist) that when the Plaintiff inquired to both doctors, they informed the Plaintiff that tumors *do not* enter into an individual's body cancerous. They become cancerous if the tumor and/or the cells of the tumor are left alone and are allowed to grow undetected by medical staff of not testing for cancer with the symptoms of bloody urine, high contents of protein and ketones in blood and urine tests. Then the tumor will become cancerous.

What doctor(s) would continue to prescribe the same medicine or treatment that was not improving, curing or working towards solving the medical problem with the Plaintiff. That would be a fruitless endeavor to continue on the same path of failure.

## ARGUMENT

As to why this Honorable Court should appoint new counsel to the Plaintiff. The Plaintiff is an indigent litigant, which the Court knows due to the fact that the Plaintiff was Granted informa pauperis. The Plaintiff also acknowledges that this Honorable Court has granted pro bono representation before in this case. Said attorney voluntarily withdrew from this case due to irreconcilable differences.

The Plaintiff has recently had a head concussion, Grade 3 trauma at the Richland Correctional Institution. On June 24, 2025 at approximately 12:05 p.m., the Plaintiff, Lonnie Thompson was the victim of an unprovoked attack and the vicious assault inflicted upon the Plaintiff that unfortunate day. The Plaintiff was sucker punched on the right side of his face, the punch connecting to the Plaintiff's right eye and right jaw. The Plaintiff was knocked to the concrete floor of the dorm by this punch, and the Plaintiff was being attacked by this other inmate while on the floor. The Plaintiff managed to get to his feet and was immediately thrown a second time to the concrete floor by an unknown correctional

4

officer at the time of the incident. This correctional officer (Matthew Myers), who was responding to a "Man Down" alert of the fight that the Plaintiff was involved in. This correctional officer came from behind the Plaintiff, without the Plaintiff knowing this correctional officer's presence and proceeded to pick the Plaintiff up completely off of the plaintiff's feet in a type of a bear hug and slam the Plaintiff head first to the concrete floor with enough of unnecessary force to knock the Plaintiff completely unconscious. This correctional officer never gave any direct orders as to stop fighting or get down on the floor command. The Plaintiff was immediately taken off of my feet from behind by this correctional officer, which I never knew was there, and slammed to the concrete flooring, head first as I was told by the institutional personnel.

The Plaintiff remembers nothing of this correctional officer coming from behind me picking me up off of the floor and slamming me head first to the floor. I woke up on the floor with my head bleeding profusely with my hands cuffed behind my back. The Plaintiff was then taken to the institutional infirmary to received medical help. After I was seen by the institutional nurse, I was immediately taken to the hole (Segregation). While in segregation, the Plaintiff continued to vomit and eventually passed out.

The institutional nurse came back to segregation after numerous requests to come to segregation to check up on the Plaintiff. When the nurse examined the Plaintiff's eyes and the Plaintiff's eyes did not dilate when a pen light was shown into them, the nurse then requested authorization for the Plaintiff to go to the outside hospital, (Mansfield General Hospital) located in Mansfield, OH. The Plaintiff, after ten (10) hours since the attack happened was transported to the outside hospital by a private outside ambulance. Once at Mansfield General Hospital, a CAT Scan was taken and the final diagnosis was that the Plaintiff did indeed suffer a Head Concussion, grade 3. The Plaintiff is scheduled for a complete work up of an MRI with contrast to determine the severity of the head (concussion) injury.

The Plaintiff was returned back to the Richland Correctional Institution and taken back to

5

segregation where he only received "Tylenol" for the pain. Since this life changing event has happened, the Plaintiff has been experiencing a constant ringing in his ears, blurry vision and severe debilitating migraines. The Plaintiff is experiencing memory loss and finds it very difficult to focus and to concentrate.

The Plaintiff was not able to pack up his own personal belongings, which included all the Plaintiff's legal documents from the instant case nor most of his personal property which was either thrown away or stolen. The Plaintiff was transferred from Richland Correctional Institution to the Trumbull Correctional Institution within ten (10) days of this incident. The Plaintiff believes he was transferred out of the Richland Correctional Institution due to suspicion that the institutional administration knew that the correctional officer was wrong in his excessive use of force when he maliciously slammed the Plaintiff to the concrete floor using unnecessary, unwarranted and excessive force.

The Plaintiff is now experiencing severe migraines, constant and continuing numbness and paint in his arms, hands and especially the fingers. The Plaintiff has constant blurriness in both eyes and trouble remembering everyday tasks. The Plaintiff did not have any of these problems or symptoms before this incident happened.

The Plaintiff now has a legal library inmate helping him compose his motions and his filings. Outside of the factual complexity of the instant case, the Plaintiff's ability and inability to investigate this case, of the conflicting testimony of both parties, this will be a disadvantage on the Plaintiff's behalf. The Plaintiff knows that *appointment of counsel is a privilege and not a right*. Also that this Honorable Court has granted the Plaintiff an attorney in the past. That attorney/client relationship was not in the best interest of the Plaintiff. The Plaintiff knows that outside of extraordinary circumstances, the Court will not grant such a request. The Plaintiff would like to refile this new Motion for Counsel due the difficulty of the Plaintiff's inability to focus without migraine headaches from his injury. The Plaintiff

is now undergoing Chemotherapy treatments again for his Bladder/Prostate Cancer. This along with the Head Concussion has contributed to the Plaintiff's inability to concentrate and to give due diligence to his own representation of this case.

## CONCLUSION

For the reasons stated within this motion, the Plaintiff prays that he has shown good cause and in good faith, provided this Honorable Court with the necessary facts and extraordinary circumstances to justify the Court to Grant this renewal of the Plaintiff's Motion for Appointment Counsel. The Plaintiff does believe that from him suffering this traumatic Head Concussion, this is of extraordinary circumstance in which the Court would consider Ordering Pro Bono Counsel to represent the Plaintiff in the instant case.

Lonnie Thompson, pro-se
# 640-614
Trumbull Correctional Institution
Post Office Box 901
Leavittsburg, OH 44430

## CERTIFICATE OF SERVICE

I, Lonnie Thompson do certify that a true copy of the Motion For The Appointment of Counsel was mailed via the United States Postal Service from the Trumbull Correctional Institution to the Ohio Attorney General Office, ATTN: Assistant Attorney Mindy Worly, 30 E. Broad Street – 23rd Floor, Columbus, OH 43215 on this 22 day of December, 2025.

Lonnie Thompson, pro-se
# 640-614