IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Lonnie Thompson,** | Case No. 1:23-cv-1656-PAB |
| **Plaintiff,** | |
| -vs- | JUDGE PAMELA A. BARKER |
| **Julie Hensley, et al.,** | MEMORANDUM OPINION & ORDER |
| **Defendants.** | |

Currently pending before the Court is *pro se* Plaintiff Lonnie Thompson's ("Plaintiff" or "Thompson") Motion for Reconsideration filed on December 4, 2025 (the "Motion").[1]  (Doc. No. 84.)  On December 23, 2025, Defendants Julie Christine Hensley ("Hensley"), Kendra Lynn Newland ("Newland"), Dr. Ifeoma Ada Chinweoke Ojukwu ("Dr. Ojukwu"), Kelli Cardaras ("Cardaras"),[2] Rachael Elizabeth Wheeler ("Wheeler"), and Sherry Lynn Cornwell ("Cornwell") (together, "Defendants") filed their Memorandum Contra Plaintiff's Motion (the "Response") (Doc. No. 86.)  On January 20, 2026, Plaintiff filed his Reply to the Response (the "Reply").  (Doc. No. 91.)  For the following reasons, Plaintiff's Motion is DENIED.[3]

---

[1] Specifically, in Plaintiff's Motion, Thompson requests that this Court "reconsider the dismissal of the above-captioned case in an Opinion & Order entered on October 30, 2025."  (Doc. No. 84 at PageID # 658.)  In its Memorandum Opinion and Order issued on October 30, 2025 ("MOO"), the Court did not dismiss this case.  It dismissed Defendants Hensley, Newland, Dr. Ojukwu, Wheeler and Cornwell, but did not dismiss Defendant Cardaras who remains a party in this case. (Doc. No. 80.)

[2] The Amended Complaint refers to Kelli Cardaras as "Cadaras," but the Court refers to her as "Cardaras," which is the name used in Defendants' Response.  (*Compare* Doc. No. 57 at PageID # 412, *with* Doc. No. 86 at PageID # 680.)

[3] This Memorandum Opinion and Order incorporates by reference as though fully rewritten herein, the allegations as set forth and evaluated in the Court's MOO. (Doc. No. 80 at PageID #s 605-11) (citing Doc. No. 57 at PageID #s 407-15.)

I. **Procedural History**

Plaintiff, proceeding *pro se*, filed his Complaint in this Court on August 25, 2023. (Doc. No. 1.) On May 28, 2024, the Court appointed Attorney Joseph T. Sobecki as pro bono counsel for Plaintiff. (Doc. No. 23.) On January 10, 2025, Plaintiff, through counsel, filed his Amended Complaint. (Doc. No. 57.) On March 3, 2025, the Court granted Sobecki leave to withdraw as Plaintiff's counsel. (Doc. No. 60.) *See* Non-Doc. Order dated March 3, 2025.

In his Amended Complaint, Plaintiff asserted a deliberate indifference claim under 28 U.S.C. § 1983 against each of the named Defendants, in their personal capacities, for violating his right to be free from cruel and unusual punishment under the Eighth Amendment and the Fourteenth Amendment. (Doc. No. 57 at PageID #s 408-16.) On April 25, 2025, Defendants filed their Motion to Dismiss. (Doc. No. 70.) On June 24, 2025, Plaintiff filed his Motion in Opposition to Defendants' Motion to Dismiss. (Doc. No. 74.) On June 26, 2025, Defendants filed their Motion to Strike and Reply to Plaintiff's Belated Opposition Reply. (Doc. No. 75.) On October 30, 2025, this Court issued its MOO, granting in part and denying in part Defendants' Motion to Dismiss. (Doc. No. 80.) In the Order, the Court dismissed Plaintiff's claims against Hensley, Newland, Dr. Ojukwu, Wheeler, and Cornwell but declined to dismiss Plaintiff's claim against Cardaras. (Doc. No. 80 at PageID # 645.)

On December 4, 2025, Plaintiff filed his Motion requesting that the Court reconsider its decision in the October 30, 2025 MOO. (Doc. No. 84.) On December 23, 2025, Defendants filed their Response. (Doc. No. 86.) On January 20, 2026, Plaintiff filed his Reply in support of the Motion. (Doc. No. 91.)

Although Plaintiff asserts that he is bringing his Motion pursuant to Federal Rules of Civil Procedure 59(e) and 54(b), he also acknowledges that because the Court's MOO is not a final

2

judgment but an interlocutory order, it is Rule 54(b) that applies in evaluating his Motion. The Court and Defendants agree.

## II. Standard of Review

"Rule 59(e) is only applicable where final judgment has been rendered, and motions for reconsideration of interlocutory orders are brought under Rule 54(b)." *Am. Clothing Express, Inc. v. Cloudflare, Inc.*, 2022 WL 3401929 at *1 (W.D. Tenn. Aug. 16, 2022) (citing *Adkisson v. Jacobs Engineering Group, Inc.*, 36 F.4th 686, 694 (6th Cir. 2022)). Under both the common law and Federal Rule of Civil Procedure 54(b), district courts have the "authority . . . to reconsider interlocutory orders . . . 'as justice requires.'" *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004) (quoting *Citibank (South Dakota), N.A. v. FDIC*, 857 F. Supp. 976, 981 (D.D.C. 1994)).

Courts apply an identical standard of review to motions to reconsider under Rule 59(e) and Rule 54(b). *See Novia Commc'ns, LLC v. Weatherby*, 2019 WL 669622 at *1 (N.D. Ohio Feb. 19, 2019) ("[T]he standard is nearly identical for both a Rule 54(b) and Rule 59(e) motion[.]"), *aff'd*, 2021 WL 3399827 (6th Cir. Aug. 4, 2021); *Brookdale Senior Living, Inc. v. Caudill*, 2015 WL 5822633 at *2, n. 2 (E.D. Ky. Oct. 1, 2015) ("[T]he standard for reconsidering interlocutory orders under Rule 54(b) is the same as the standard under Rule 59(e).") (citation omitted).

A court may grant a motion to reconsider when the plaintiff shows "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar*, 616 F.3d at 615 (citation omitted); *see also Luna v. Bell*, 887 F.3d 290, 297 (6th Cir. 2018) (quoting *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009)) (applying same factors to motion to reconsider an interlocutory order);

3

*Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004) (same); *Christian v. Altaire Pharms., Inc.*, 2021 WL 3578812 at *3 (6th Cir. Aug. 10, 2021) (same).

"It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.'" *McConocha v. Blue Cross & Blue Shield Mut. of Ohio*, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996); *see also Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 841 (6th Cir. 2018). Motions to alter or amend are extraordinary and should be sparingly granted. *See Cequent Trailer Products, Inc. v. Intradin (Shanghai) Machinery Co., Ltd.*, 2007 WL 1362457 at *2 (N.D. Ohio May 7, 2007) (citing *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995)).

### III. Analysis

In the Motion, Plaintiff argues that this Court should not have dismissed each of the Defendants.[4] As to Hensley, Plaintiff asserts that "he clearly alleged that [she] 'either was aware or should have been aware that Thompson was continuously experiencing bloody and painful urinations, having urinary tract infections, that urine tests indicated high levels of blood, protein, and ketones, and that [Plaintiff] had numerous nurse and doctor sick calls complaining of the above, among other issues.'" (*Id.* at PageID # 662).[5] Plaintiff alleged she "directed derogatory statements towards him such as telling him he was anal retentive." (*Id.*) Plaintiff argues that he "plausibly alleged facts showing that (1) the government official violated [his] constitutional rights, and (2) that this right was

---

[4] As already noted, the Court did not dismiss Cardaras.

[5] Throughout the Motion, Plaintiff sets forth or quotes the allegations included in his Amended Complaint that the Court quoted or included in the Factual Allegations section of its MOO and considered in evaluating Defendants' Motion to Dismiss. *See* (Doc. No 80 at PageID #s 605-11) (citing Doc. No. 57 at PageID #s 407-15.)

4

clearly established at the time of the violation." (*Id.*) He contends that "[t]he continuous misdiagnosis of urinary tract infections and repetitive ineffective treatment for urinary tract infections for over a year and telling him there was nothing more to his illnesses led to a delay in the diagnosis of prostate and bladder cancers." (*Id.* at PageID #s 662-63.) Plaintiff maintains that "[t]he delay in treatment and the ongoing, unaddressed pain related to the same were unnecessary." (*Id.* at PageID # 663.) Citing to *Blackmore v. Kalamazoo County*, 390 F.3d 890 (6th Cir. 2004), Plaintiff contends that "[i]t would be obvious to a lay person that prolonged, repeated, painful, and bloody urinations would require additional testing to fully evaluate Plaintiff's conditions," and since Hensley failed to order this testing, Plaintiff has met both the objective and subjective prongs of deliberate indifference and this Court erred in finding that she is entitled to qualified immunity. (*Id.*)

Plaintiff offers similar, if not identical, arguments regarding this Court's dismissal of other defendants. As to Newland, he asserts that "[i]nstead of ordering further diagnostic testing to discover the cause of Plaintiff's ongoing serious medical needs, Defendant Newland chose to continue ineffective treatment and 'informed [him] that she did not believe he had cancer.'" (*Id.* at PageID # 664.) According to Thompson, "[t]his was more than mere negligence, but deliberate indifference to serious medical needs; the diagnoses and treatment of Plaintiff's bladder and prostrate cancers." (*Id.*) Asserting that the allegations in his Amended Complaint that "Newland's 'actions and lack thereof prompt action caused [him] unnecessary pain and suffering' and 'delayed [his] cancer treatment and caused harm[,]'" as true, Newland "would not be entitled to qualified immunity, with Plaintiff meeting both the objective and subjective prongs of deliberate indifference." (*Id.*) (quoting Doc. No. 57 at PageID # 410.)

As to Dr. Ojukwu, Plaintiff contends he "cannot claim ignorance of Plaintiff's serious medical needs, as he was aware, by law [], of Plaintiff's complaints and the ineffective treatments repeatedly

5

provided which did nothing to properly diagnose or treat his cancers for more than a year[;] and even Dr. Ojukwu's "eventual requested consult for evaluation of Plaintiffs prostate gland, which was denied, did not occur until a year after Plaintiff's initial and repeated pleas for care." (Doc. No. 84 at PageID # 665.) According to Plaintiff, "[a]ny lay person knows that to continue the same ineffective treatment for a year in light of non-responsive and worsening symptomatology is more than mere negligence, but would surely be consistent with deliberate indifference." (*Id.*) Plaintiff asserts then, that Dr. Ojukwu would not be entitled to qualified immunity.

As to Wheeler and Cornwell, Plaintiff argues that after he had been diagnosed with prostate and bladder cancer, both Wheeler and Cornwell "would not follow the orders of the specialists and provide Plaintiff with the appropriate treatment as ordered." (*Id.* at PageID #s 667, 669.) According to Plaintiff, "[a]ny lay person would know that cancer is a painful condition" and that "cancer patients require additional nutrition" and these Defendants' withholding of Ultram/Tramadol for pain management and Ensure for nutrition was not mere negligence but deliberate indifference to his serious medical needs and therefore, Wheeler and Cornwall are not entitled to qualified immunity. (*Id.* at PageID #s 667-70.) Plaintiff asserts that this Court committed an error of fact and law in determining that because Plaintiff's allegations against Wheeler and Cornwell did not include an allegation that either one's actions caused him to suffer any "harm," dismissal of his claims against them warranted dismissal, claiming that pain is harm. (*Id.* at PageID #s 668, 670.) Plaintiff asserts that his claims against Wheeler and Cornwell should be treated the same under the law as the claim against Cardaras, which survived dismissal, because the claims are so similar and as this Court found as to Cardaras, it should find that Wheeler and Cornwell are not entitled to qualified immunity. (*Id.* at PageID # 671.)

6

In their Response, Defendants argue that this Court should deny the Motion because it is "nothing more than an attempt to reargue the case" "based upon the very same characterization of the facts Plaintiff previously argued in opposing Defendants' motion to dismiss." (Doc No. 86 at PageID # 680.) As regards to the bases for this Court's conclusions that Hensley, Newland, Dr. Ojukwu, Wheeler and Cornwell should be dismissed from this action, Defendants contend that in his Motion, Plaintiff has failed to cite any intervening change of controlling law, fails to cite to any new evidence, and fails to identify any clear error of fact or law that needs correcting to prevent manifest injustice.

As to Hensley, Defendants correctly contend that in Plaintiff's Opposition to their Motion to Dismiss, Thompson raised the same argument that Plaintiff's allegations against Hensley that she was aware of Thompson's complaints and test results but failed to properly diagnose him support a claim of deliberate indifference to his medical needs. Defendants correctly maintain that Plaintiff fails "to address the Court's finding that Hensley is entitled to qualified immunity because there is no case law which would have put her on notice of a duty to exercise her own independent medical judgment rather than deferring to the medical judgment of those who, unlike her, had the diagnostic and treatment authority to care for" Plaintiff. (*Id.* at PageID # 682.)

As to Newland, Defendants argue that in its MOO, the Court concluded that Plaintiff's Amended Complaint did not set forth allegations against her that plausibly demonstrated that the subjective component of a deliberate-indifference claim was met. Specifically, Defendants correctly quote from the portion of this Court's MOO where it concluded that Plaintiff's allegations failed to show that Newland was "'aware of facts from which the inference could be drawn that a substantial risk of serious harm to [Plaintiff] exist[ed],'" much less that she "'dr[ew] the inference[,]'" and therefore, was entitled to qualified immunity. (Doc. No. 86 at PageID # 683) (quoting Doc. No. 80 at PageID # 625.) According to Defendants, neither in his Opposition to Defendants' Motion to

7

Dismiss or his Motion does Plaintiff establish that Plaintiff's Amended Complaint includes allegations demonstrating that Newland had a sufficiently culpable state of mind to be deliberately indifferent to Plaintiff's serious medical needs so as to render her ineligible for qualified immunity.

As to Dr Ojukwu, Defendants argue that "nowhere does either Plaintiff's opposition or his motion for reconsideration establish that Defendant Dr. Ojukwu violated Plaintiff's clearly established constitutional rights." (Doc. No. 86, at PageID # 684.) Defendants correctly observe that "[to] the contrary, the Court found that when a subordinate official (here, Dr. Ojukwu) disagrees with the determination of a superior official (here, the unnamed medical official who had the superseding authority to deny Dr. Ojukwu's referral for Plaintiff to be seen by a specialist), the prisoner has no clearly established right to have the subordinate 'exercise[] their own independent medical judgment and more strenuously advocate[] for [the plaintiff] to receive [the] treatment much sooner.'" (*Id.*) (quoting Doc. No. 80 at PageID # 629) (quoting *Est. of Majors v. Gerlach*, 821 Fed. Appx. 533, 547 (6th Cir. 2020)).

As to Wheeler and Cornwell, Defendants correctly note that the Court found that Plaintiff's Amended Complaint did not state a plausible claim that they violated Plaintiff's Eighth Amendment rights because Plaintiff's Amended Complaint failed to allege that the alleged denial of his prescribed treatment plan caused Plaintiff to suffer harm. (Doc. No. 86 at PageID # 685.) And, according to Defendants, Plaintiff could have sought leave to amend his Amended Complaint to allege harm, pursuant to Fed. R. Civ. P. 15, but failed to do so before the Court issued its MOO.

In his Reply, Plaintiff argues that he "does not wish to re-litigate the case but to bring the Court's attention to the fact of the definition of deliberate indifference as it relates to 'harm' as in the below case law." (Doc. No. 91 at PageID # 720.) He emphasizes that "delaying treatment in the face of significant pain is harm sufficient to support a finding of deliberate indifference." (*Id.* at PageID

8

# 721) (emphasis omitted) (citations omitted). Plaintiff turns to each of the dismissed defendants and argues that their delay in diagnosing Plaintiff and refusal to provide him proper treatment were sufficient to constitute deliberate indifference. (*Id*. at PageID #s 722-25.)

### A. Hensley

This Court declines to reconsider its dismissal of Hensley, finding that in his Motion, Plaintiff raises the same arguments that he did in his Brief in Opposition to Defendants' Motion to Dismiss, fails to address the Court's finding that Hensley is entitled to qualified immunity, and attempts to raise new arguments not before presented to the Court.

Plaintiff argues that his claims against Hensley should not have been dismissed because Hensley was aware of his symptoms yet failed to fully evaluate him. (Doc. No. 84 at PageID # 662); *see also* (Doc. No. 91 at PageID # 721) ("The fact of unjustifiable delay of diagnosis and treatment are clear from the record, with unnecessary delay in the face of the facts in the case being consistent with deliberate indifference.") He argues that this failure satisfied both the subjective and objective prongs of the deliberate indifference standard and thus Hensley is not entitled to qualified immunity. (*Id*.) (citing *Blackmore v. Kalamazoo County*, 390 F.3d 890 (6th Cir. 2004)). Defendants correctly assert that Plaintiff has already raised this argument and cannot do so again. (Doc No. 86 at PageID # 680.) In his Brief in Opposition to Defendants' Motion to Dismiss, Plaintiff argued that "Hensley should have known that there was a much more problematic situation going [on] with the [P]laintiff's health with all of his tests coming back with higher and alarming results." (Doc. No. 74 at PageID # 521.) Later on, he writes that "[t]he [C]omplaint clearly establishes the direct and/or indirect elements needed to pas[s] the subjective and objective prongs necessary for the requirements of the deliberate indifference clause violated by each defendant through their actions and/or inactions." (*Id.* at PageID

# 529.) Plaintiff cannot restate the arguments raised in his Brief in Opposition to Defendants' Motion to Dismiss and expect a different result. *See Gascho*, 918 F.Supp.2d at 715.

Moreover, nowhere in Plaintiff's Motion does he address the Court's finding that case law fails to put Hensley "on notice of a duty to have 'exercised [her] own independent medical judgment and more strenuously advocated for [Plaintiff] to receive [a transurethral resection] much sooner.'" (Doc. No. 80 at PageID # 623) (quoting *Est. of Majors v. Gerlach,* 821 Fed. Appx. 533, 547 (6th Cir. 2020)).

In his Reply, Plaintiff cites *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) for his argument that "the violation of [his] constitutional rights was demonstrated via clearly 'settled law.'" (Doc. No. 91 at PageID # 722.) However, in *Wesby*, the Supreme Court defined "settled law" as "dictated by 'controlling authority' or 'a robust "consensus of cases of persuasive authority."'" 583 U.S. at 63 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011)) (quoting *Wilson v. Layne,* 526 U.S. 603, 617 (1999)) (citations omitted). Plaintiff still neglects to address the Court's finding that Plaintiff failed to reference any case law that would have put Hensley on notice of a duty to exercise her own independent medical judgment rather than deferring to the medical judgment of those who, unlike her, had the diagnostic and treatment authority to care for Plaintiff, demonstrating that Hensley violated Plaintiff's clearly established Eighth Amendment rights. *See* (Doc. No. 80 at PageID # 624.)

In his Reply, Plaintiff also argues that "[t]he fact of law that pain is harm does not appear to have been properly considered by the Court." (Doc. No. 91 at PageID # 721.)[6] Plaintiff correctly acknowledges that a delay in treatment *may* constitute deliberate indifference, but from this premise,

---

[6] Plaintiff references Fourth and Seventh Circuit decisions to support this argument. (Doc. No. 91 at PageID # 723) (citing *Sharpe v. S.C. Dep't of Corr.*, 621 Fed. Appx. 732, 734 (4th Cir. 2015) (citing *McGowan v. Hulick,* 612 F.3d 636, 640 (7th Cir. 2010)). However, these circuit courts relied on the Supreme Court decision in *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976), to find that a delay in treatment could constitute deliberate indifference.

he appears to assert that "pain is harm" sufficient to constitute deliberate indifference. The cases that Plaintiff cites in support of this proposition discuss the circumstances under which a delay in treatment may constitute deliberate indifference, but they do not stand for the general proposition that any pain experienced by a plaintiff satisfies the deliberate indifference standard. Further, the Court notes that in those cases, the courts did not find that the existence of *any* delay in treatment was sufficient to support a finding of deliberate indifference. Rather, they held that "[a] delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)); *see also Sharpe v. S.C. Dep't of Corr.*, 621 Fed. Appx. 732, 734 (4th Cir. 2015). Accordingly, Plaintiff's argument fails for two reasons.

First, a party "cannot use a motion for reconsideration to raise new legal arguments that could have been raised before" the Court issued its decision. *Dayton Veterans Residences Ltd. P'ship v. Dayton Metro. Hous. Auth.*, 2021 U.S. App. LEXIS 34511 at \*16 (6th Cir. Nov. 19, 2021) (quoting *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007)). Plaintiff did not raise this argument before and thus he cannot raise it for the first time now.

Second, even if Plaintiff had raised this argument in his Brief in Opposition to the Motion to Dismiss, it does not affect the Court's finding that Hensley was entitled to qualified immunity. Namely, that Plaintiff failed to show that Hensley violated Plaintiff's clearly established Eighth Amendment rights. *See* (Doc. No. 80 at PageID # 624.) *See also Bailey v. Washington*, 2023 WL 5511181 at \*4 (E.D. Mich. Aug. 25, 2023) ("When a deliberate indifference claim intersects with a qualified immunity defense, courts must be clear in their analyses: a defendant cannot be 'deliberately indifferent' to a right that is not clearly established.")

11

For these reasons, this Court will not reconsider its decision to dismiss the claims against Hensley.

### B. Newland

The Court will not reconsider its dismissal of Newland because Plaintiff raised the same arguments that he did in his Brief in Opposition to the Motion to Dismiss and failed to address this Court's finding that Newland was entitled to qualified immunity.

As Defendants point out, (Doc. No. 86 at PageID # 683), Plaintiff again raises the same arguments opposing the dismissal of Newland that he did in his Brief in Opposition to the Motion to Dismiss. *Compare* (Doc. No. 84 at PageID # 664) (quoting Doc. No. 80 at PageID # 625) (quoting Doc. No. 57 at ¶ 35, PageID # 410) ("Defendant Newland chose to continue ineffective treatment and 'informed [him] that she did not believe that he had cancer.' "), *with* (Doc. No. 74 at PageID # 523) ("Defendant Newland prolonged requesting for the correct and obvious preventive measures to investigate by requesting and ordering tests to either clarify the [P]laintiff's not having cancer or to prove that the [P]laintiff did not have cancer.") He cannot raise it now. *See Gascho v. Global Fitness Holdings, LLC*, 918 F.Supp.2d 708, 715 (S.D. Ohio 2013).

Defendants also argue that the Motion fails to address the Court's finding that "[N]ewland did not have a '"sufficiently culpable state of mind" ' to be deliberately indifferent to Plaintiff's serious medical needs." (Doc. No. 86 at PageID # 683) (quoting Doc. No. 80 at Page ID# 627) (quoting *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citation omitted)). In the Motion, Plaintiff does not address the Court's finding that if Newland "'communicated [her] knowledge' to [Plaintiff] that she did not believe that [Plaintiff] had cancer, then she necessarily did not believe he had cancer." (Doc. No. 80 at PageID # 626) (quoting Inform, Merriam-Webster Online Dictionary,

12

https://www.merriam-webster.com/dictionary/inform (last visited Feb. 19, 2026)).[7] In his Reply, Plaintiff contends that Newland's belief that he did not have cancer "reflected her attitude – to do nothing substantive to address Plaintiff's serious medical needs." (Doc. No. 91 at PageID # 722.)[8] Plaintiff has not alleged that Newland's actions satisfy the subjective component of the Eighth Amendment inquiry.

**C. Dr. Ojukwu**

This Court will not reconsider its dismissal of Dr. Ojukwu since as Defendants point out, Plaintiff fails to address the Court's finding that Dr. Ojukwu was entitled to qualified immunity. (Doc. No. 86 at PageID # 684.) In its October 30th Order, this Court held that:

> *Majors* establishes that when a subordinate official (here, Dr. Ojukwu) disagrees with the determination of the superior official (here, the unnamed individual or entity who had the superceding authority to deny Dr. Ojukwu's referral), the prisoner has no clearly established right to have the subordinate "exercise[] their own independent medical judgment and more strenuously advocate[] for [the plaintiff] to receive [the] treatment much sooner."

(Doc. No. 80 at Page ID# 629) (quoting *Est. of Majors v. Gerlach,* 821 Fed. Appx. 533, 547 (6th Cir. 2020)). This Court found that "Dr. Ojukwu *lacked* the authority to order for [Plaintiff] the medical treatment which Dr. Ojukwu allegedly knew [Plaintiff] needed (here, the transurethral resection of the prostate), but Dr. Ojukwu tried (unsuccessfully) to obtain that treatment for him." (Doc. No. 80 at PageID # 629.) Plaintiff has not demonstrated that Dr. Ojukwu violated Plaintiff's clearly established rights. Plaintiff maintains that Dr. Ojukwu should "not be able to hide behind this

---

[7] In the Amended Complaint, Plaintiff alleges that Newland "informed [him] that she did not believe that he had cancer." (Doc. No. 57 at ¶ 35, PageID # 410.)

[8] Once again, Plaintiff raises the same argument that "pain is harm." (Doc. No. 91 at PageID # 723) (citing *Sharpe v. S.C. Dep't of Corr.*, 621 Fed. Appx. 732, 734 (4th Cir. 2015)) (citing *McGowan v. Hulick,* 612 F.3d 636, 640 (7th Cir. 2010)). Plaintiff cannot raise this argument for the first time now. *See Dayton Metro. Hous. Auth.*, 2021 U.S. App. LEXIS 34511 at *16 (quoting *Roger Miller Music, Inc.*, 477 F.3d at 395). If he could, this Court would reaffirm that Newland could not possess a sufficiently culpable state of mind having already expressed her belief that Plaintiff did not have cancer.

13

privilege of immunity."  (Doc. No. 91 at PageID # 724.)  However, this blanket proclamation is insufficient to salvage Plaintiff's claim against Dr. Ojukwu.

**D.     Wheeler and Cornwell**

This Court will not reconsider its decision to dismiss Wheeler and Cornwell as Plaintiff did not adequately allege that he experienced harm as a result of their actions.  The Court held that that "Wheeler and Cornwell did not violate [Plaintiff's] Eighth Amendment rights because [Plaintiff's] allegations against them fail to include that Wheeler's and Cornwell's denial of his prescribed plan of treatment caused him to suffer harm, and therefore, he failed to satisfy the objective component of his Eighth Amendment claim."  (Doc. No. 80 at PageID # 636.) [9]

In the Motion, Plaintiff asserts that "[p]ain is harm."[10]  (Doc. No. 84 at PageID # 668) (citing *Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir. 1978) and *Webb v. Hamidullah*, 281 Fed. Appx. 159, 167 (4th Cir. 2008)).[11]  Even if this Court were to accept Plaintiff's proposition, the Amended Complaint does not sufficiently allege that Plaintiff was in pain.  *See* (Doc. No. 87 at ¶¶ 59-84, PageID #s 413-15.)  Namely, Plaintiff did not show that the Tylenol that Wheeler and Cornwell provided did not adequately control his pain or that he experienced weight loss, which was worsened by Wheeler and Cornwell's failure to prescribe Ensure.  As this Court has already discussed, the cases that

---

[9] In its October 30th Order, this Court held that it could not consider allegations made by Plaintiff in his Brief in Opposition to Defendants' Motion to Dismiss, in which he asserts that Wheeler and Cornwell's action caused him harm, because those allegations were not originally contained in the Amended Complaint.  (Doc. No. 80 at PageID #s 640-41) (quoting Doc. No. 74 at PageID #s 527-28.)

[10] Further, as this Court has already discussed, Plaintiff cannot raise this argument for the first time now.  *See Dayton Metro. Hous. Auth.*, 2021 U.S. App. LEXIS 34511 at *16 (quoting *Roger Miller Music, Inc.*, 477 F.3d at 395).

[11] In *Webb*, the Fourth Circuit held that the delay of the plaintiff's hernia surgery did not cause him to suffer harm or worsen his condition.  281 Fed. Appx. At 167 (4th Cir. 2008) ("Our unpublished decisions recognize that a delay with respect to hernia surgery does not necessarily constitute deliberate indifference, absent some resultant harm or a worsened condition.")

Plaintiff cites in support of this proposition address the circumstances under which a delay in treatment may constitute deliberate indifference. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (citing *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain.") The Amended Complaint does not allege that Wheeler and Cornwell's failure to follow to Plaintiff's treatment plan "prolonged" his pain. Thus, Plaintiff fails to satisfy the objective component of the Eighth Amendment inquiry.

Plaintiff argues that this Court should treat his claims against Wheeler and Cornwell the same as his claim against Cardaras, but those claims can be distinguished for several reasons. (Doc. No. 84 at PageID # 671.) Importantly, Plaintiff adequately alleged that he suffered harm as a result of Cardaras's alleged failure to adhere to the treatment plan and thus satisfied the objective prong of this Court's Eighth Amendment inquiry. *See* (Doc. No. 80 at PageID # 632) ("[Plaintiff's] condition was 'diagnosed by a physician as mandating treatment' because surgeons, urologists, and oncologists issued orders for him to receive Ensure to facilitate his weight gain and Oxybutynin/Ditropan to treat his bladder spasms, and potentially other medications to treat those conditions. And, critically, Cardaras's denial 'caused [him] unnecessary pain and suffering' and 'harm.'") (citing Doc. No. 57 at ¶ 57, PageID # 412.)

## IV.   Conclusion

For the foregoing reasons, Plaintiff's Motion (Doc. No. 84) is DENIED.

IT IS SO ORDERED.

*s/Pamela A. Barker*  
PAMELA A. BARKER  

Date:  March 4, 2026                                      U. S. DISTRICT JUDGE