**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LONNIE THOMPSON, | : | |
| | : | **Case No. 1:23-CV-01656** |
| **Plaintiff,** | : | |
| | : | **Judge Pamela A. Barker** |
| v. | : | |
| | : | **Magistrate Judge James E. Grimes Jr.** |
| JULIE A. HENSLEY, *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

---

**MOTION OF DEFENDANT CARDARAS FOR SUMMARY JUDGMENT**

---

Pursuant to Federal Rule of Civil Procedure 56, Defendant, Kelli Cardaras ("Defendant"),

by and through counsel, respectfully moves the Court to grant her summary judgment in the instant

case filed by Plaintiff, Lonnie Thompson ("Plaintiff"). The grounds for Defendant's motion are

more fully described in the supporting memorandum set forth below.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

s/ *Mindy Worly*
MINDY WORLY (0037395)
Principal Assistant Attorney General
Criminal Justice Section
Corrections Litigation Unit
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
Phone: (614) 728-0161/Fax: (866) 474-4985
Mindy.Worly@OhioAGO.gov

*Counsel for Defendant*

**MEMORANDUM**

**I.     The Summary Judgment Standard.**

Summary judgment should be awarded when the record reveals there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

When determining whether to grant summary judgment the Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion, in this case Plaintiff.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Even so, the party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby*, 477 U.S. at 248 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

While the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his or her favor, *id*. at 255 (citing *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 158 (1970)), the Court need not view the facts in the light most favorable to a nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In addition, once a defendant has identified a shortfall in a plaintiff's case, the plaintiff must come forward with evidence establishing a material issue of fact for resolution by the fact-finder. *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. at 252. Nevertheless, even if the plaintiff supplements the record with some objective evidence, if that evidence is merely colorable, *Dombrowski v. Eastland*, 387 U.S. 82, 84 (1967), or is not significantly probative*, First Nat'l Bank of Arizona v. Cities Serv. Co*., 391 U.S. 253 (1968), summary judgment should be granted the defendant(s). *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. at 249.

## II.     Plaintiff Failed to Exhaust his Claims against Defendant.

The Prison Litigation Reform Act ("PLRA") contains a mandatory exhaustion requirement. *See* 42 U.S.C. § 1997e(a). Therefore, an inmate such as Plaintiff must exhaust his administrative remedies before he can challenge his conditions of confinement in federal court. 42 U.S.C. § 1997e(a). This statutory command is mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) ("An inmate 'shall' bring 'no action'..., absent exhaustion of available administrative remedies."); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("A court may not excuse a failure to exhaust ") (quoting *Ross*, 136 S. Ct. at 1856).

Therefore, to exhaust his claim against Defendant Cardaras, Plaintiff needed to complete the administrative grievance process established by the Ohio Department of Rehabilitation and Correction ("ODRC") before he filed his complaint. *Id.* Accordingly, Plaintiff could not "'simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so . . . .'" *Ware v. Azakoba*, 1:21-CV-00002-GNS, 2022 U.S. Dist. LEXIS 247836, at *4 (W.D. Ky. July 1, 2022) (quoting *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999)). 2022).

Certainly, neither ignorance of the PLRA's exhaustion requirements nor unfamiliarity with ODRC's grievance system could excuse Plaintiff's noncompliance. For instance, in *Thomas v.*

3

*McDowell*, No. 2:10-cv-152, 2013 U.S. Dist. LEXIS 130517 (S.D. Ohio 2013), the inmate argued

he should be excused from his failure to exhaust because "the institution never informed him how

to participate in the informal complaint, grievance and appeal process, and that he was unaware

that the failure to properly exhaust his administrative remedies would result in the dismissal of his

federal claims under the PLRA." *Id.* at *10. The Sixth Circuit flatly rejected the argument. *Id.* at

*11 (citing *Napier v. Laurel County*, 636 F.3d 218, 221-222 n. 2 (6th Cir. 2011).

It is therefore significant that proper exhaustion is "defined not by the PLRA, but by the

prison grievance process itself," *Jones v. Bock*, 549 U.S. 199, 211 (2007), a process which, in Ohio,

generally consists of three-steps. Ohio Admin. Code 5120-9-31(K). First, Plaintiff must file an

informal complaint within fourteen days after the event occurs to the direct supervisor or relevant

department specifically describing the event giving rise to the complaint. *Id.* at 5120-9-31(K)(1).

In the second step Plaintiff must file a notification of grievance with the inspector of institutional

services within fourteen days of receiving the informal complaint response. *Id.* at 5120-9-31(K)(2).

Finally, the third step of ODRC's administrative grievance process requires Plaintiff to file an

appeal to the office of the chief inspector within fourteen days of receiving the inspector of

institutional services' response. *Id.* at 5120-9-31(K)(3). Only after receiving the chief inspector's

final decision would Plaintiff have properly exhausted his claim against Defendant Cardaras. *Id.*

It is therefore imperative to examine what if any administrative grievances Plaintiff filed regarding

Defendant Cardaras during the relevant period.

In his Amended Complaint, ECF No. 57, filed on January 10, 2025, Plaintiff claims that

Defendant is a nurse practitioner at the Ross Correctional Institution, that between the dates of

October 14, 2022 and August 2, 2023 she denied Plaintiff access to Ensure, and potentially other

ordered medications in direct contradiction to orders from surgeons, urologists, and oncologists at

4

The Ohio State University Hospital, that she was aware that Plaintiff was reporting continuous pain in his groin and lower stomach area, that she knew, or should have known, that treatments and medications ordered by specialists were necessary, but refused to verify this fact and ignored orders from specialists regardless of the associated risks that she knew existed as a result of ignoring these orders, and that her refusal to follow and carry out these orders caused Plaintiff unnecessary pain and suffering. ECF No. 57, PageID 412-413.

Notably, however, Plaintiff's grievance history reveals that he never filed an administrative grievance against Defendant Cardaras. In fact, the record plainly shows that Plaintiff failed to file any grievances whatsoever concerning the alleged denial of Ensure, Oxybutynin/Ditropan, and/or potentially other ordered medications in direct contradiction to orders from surgeons, urologists, and oncologists at The Ohio State University Hospital. *See* Declaration of Roberta Murphy, Exhibit A attached hereto. Since this is the only claim that Plaintiff asserted against Defendant, not only is she entitled to judgment as a matter of law, but also she is entitled to  dismissal of the Complaint in its entirety. *Freeman v. Francis*, 196 F.3d 645.

### III.     Deliberate Indifference.

The Eighth Amendment protects inmates such as Plaintiff from "cruel and unusual punishments." U.S. Const., amend. VIII. The Supreme Court has held that a government official violates an incarcerated person's Eighth Amendment rights when the official shows "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *see also Murray v. Ohio,* 29 F.4th 779, 786-87 (6th Cir. 2022). An inmate can bring suit under § 1983 for an Eighth Amendment violation "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to

medical care or intentionally interfering with the treatment once prescribed." *Id.; see also Blackmore v. Kalamazoo Cnty.,* 390 F.3d 890, 895 (6th Cir. 2004).

Deliberate indifference claims under the Eighth Amendment have both an objective and a subjective component. *See Murray*, *Phillips v. Tangilag,* 14 F.4th 524, 534 (6th Cir. 2021); *Rhinehart v. Scutt,* 894 F.3d 721, 737 (6th Cir. 2018); *Blackmore,* 390 F.3d at 895. The objective component requires that the deprivation of medical treatment be "sufficiently serious." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991); *see also Farmer v. Brennan,* 511 U.S. 825, 834 (1994). The Sixth Circuit has held that a "sufficiently serious" medical need is a medical condition that has been "diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013); *see also Phillips,* 14 F. 4th at 534; *Rhinehart*, 894 F.3d at 737. "Implicit in [the deliberate indifference] standard is the recognition that the plaintiff must allege that he has suffered or is threatened with suffering actual harm as a result of the defendants' acts or omissions before he can make any claim with an arguable basis in Eighth Amendment jurisprudence." *Heid v. Hooks*, 2020 WL 5201082 at *6 (S.D. Ohio Sept. 1, 2020) (quoting *Wilson v. Yaklich,* 148 F.3d 596, 601 (6th Cir. 1998)).

The subjective component requires a prisoner to demonstrate that prison officials had a "sufficiently culpable state of mind" in denying him medical care. *Wilson,* 501 U.S. at 297; *see also Est. of Majors v. Gerlach*, 821 Fed. Appx. 533, 541 (6th Cir. 2020). "Under [Sixth Circuit] case law, [this] means 'something more than mere negligence,' but may be shown 'by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Majors*, 821 Fed. Appx. at 541 (quoting *Farmer*, 511 U.S. at 835). Ultimately, a prison official must have known of and disregarded "an excessive risk to inmate health or safety."

*Farmer*, 511 U.S. at 837. The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Id.*

The Sixth Circuit has emphasized that "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn by Parks v. Madison Cnty. Fiscal Ct.,* 22 F.3d 653, 660 (6th Cir. 1994); *see also Blackmore,* 390 F.3d at 896; *Majors,* 821 Fed. Appx. at 541. Therefore, a prison official can escape liability by showing that they "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer,* 511 U.S. at 844.

In its Opinion and Order concerning the Motion to Dismiss previously filed in this case, the Court held that *assuming* Plaintiff's allegations are true, not only did Defendant violate Plaintiff's clearly established Eighth Amendment right to his prescribed plan of treatment, ECF No. 80, PageID 634, but also she was "personally involved in the deprivation of federal rights" alleged in the Complaint. ECF No. 80, PageID 643. However, even giving Plaintiff the benefit of the doubt, the undisputed evidence shows that at least respecting the Defendant, the allegations in Plaintiff's Complaint are not true.

First and foremost, Defendant never denied Plaintiff access to a prescribed plan of treatment, much less to oxybutynin or Ditropan, which is the brand name for oxybutynin. Instead, on April 3, 2023, not only was Plaintiff approved for Ditropan for 90 days by ODRC's Medical Director, but he also received Flexeril, Tramadol, and Elavil for bladder spasms and pain while under Defendant's care. *See* the April 3, 2023 Non Formulary Medicine Request for Ditropan; the January 4, 2023 New Orders for Tramadol and Flexeril; the February 7, 2023 New Orders for Tramadol; the March 1, 2023 New Orders for Elavil; the March 16, 2023 New Orders for Ditropan and Tramadol; the April 11, 2023 New Orders for Elavil; and OSU's July 20, 2023 Discharge

7

Instructions pertaining to the resumption of all home medicines, over-the-counter pain medications (Tylenol, ibuprofen) as needed, and the previously prescribed oxybutynin as needed for bladder spasms. *See* Exhibit B, Medical Records attached to the Declaration of Kelli Cardaras, *passim*.

Nor was Ensure ordered for Plaintiff by any physician or Advanced Level Provider ("ALP") between October 14, 2022, and August 2, 2023. Instead, the sum total of OSU's July 20, 2023, Discharge Instructions for Plaintiff were to resume all home medications, take over-the-counter pain medications (Tylenol, ibuprofen) as needed, take a previously prescribed medication (oxybutynin) as needed for bladder spasms, and start his regular diet tomorrow. *See* Exhibit B, OSU's Discharge Orders attached to the Declaration of Kelli Cardaras, at p. 20 of 25.

Glaringly absent from OSU's Discharge Orders is any mention of Ensure, much less than any order for oxybutynin or Ditropan beyond the 90 days for which it was initially prescribed. Thus, Plaintiff cannot establish the objective component of his deliberate indifference claim. *Heid v. Hooks*, 2020 WL 5201082 at *6 (S.D. Ohio Sept. 1, 2020) (without the presence or threat of actual harm there is no arguable basis for a deliberate indifference claim).

That there are no orders for Plaintiff to be given Ensure whether from OSU or from any ALP at RCI is not surprising. Ensure is only ordered for patients who cannot tolerate solids, who are suffering from facial injuries, or who are recovering from serious injury or disease and have lost or are at risk of losing a significant amount of weight and/or muscle mass as a result. *See* Exhibit B, the Declaration of Kelli Cardaras, ¶ 5. Critically, Plaintiff's medical records show that on January 4, 2023, he weighed 162 lbs and had a BMI of 24.01; that on March 1, 2023, he weighed 181 lbs and had a BMI of 26.83; and that on April 11, 2023, he weighed 181 lbs and had a BMI of 26.83. *See* Exhibit B, Medical Records attached to the Declaration of Kelli Cardaras, p. 7 of 25, 12 of 25, 24 of 25.

Notably, normal BMI ranges between 19-24. By contrast, not only do Plaintiff's medical records show that even without Ensure he gained 19 lbs while under Defendant's care, but also that his BMI rose from 24.01 to 26.23 during that time. Accordingly, rather than being at risk of losing weight or muscle mass, under Defendant's care Plaintiff was well on his way to becoming obese. *See* Exhibit B, Declaration of Kelli Cardaras, ¶ 7 and Medical Records attached thereto. Certainly, between October 14, 2022, and August 2, 2023, there was no indication that Plaintiff should be provided with any nutritional supplementation. Not only was there no indication that Plaintiff suffered from any nutritional deficiency, but also there was no suggestion that he was underweight or that he was at risk of being so. *Id.*

Furthermore, while the medical records suggest that the Ditropan approved for Plaintiff for 90 days on April 3, 2023, apparently expired before he was transferred from RCI on August 2, 2023, Defendant was never ordered to renew Plaintiff's Ditropan, was never asked by Plaintiff to renew this prescription for him, nor was she aware that Plaintiff's Ditropan prescription had expired. Instead, on April 11, 2023, Plaintiff specifically asked Defendant to stop his Ditropan because it made him feel funny and have a dry mouth. *See* Exhibit B, Medical Records attached to the Declaration of Kelli Cardaras, p. 25 of 25.

Subsequently, due to complaints about pain in his groin, Plaintiff was seen in Nurse's Sick Call on both July 28, 2023, and July 31, 2023. Although the nurses at Nurse's Sick Call referred Plaintiff to an ALP, it was not to the Defendant. Instead, Plaintiff was scheduled to see an ALP at the prison to which he was transferred on August 2, 2023. Indeed, not only was Plaintiff not seen by the Defendant on July 28, 2023, July 31, 2023, or between that time and his prison transfer, but also, she had no reason to suspect that he was experiencing any unnecessary discomfort when all OSU ordered on July 20, 2023, was that he take over-the-counter medications such as Tylenol or

9

ibuprofen for pain. *See* Exhibit B, OSU's Discharge Orders attached to the Declaration of Kelli Cardaras, p. 20 of 25. Thus, a reasonable jury could not conclude that Defendant was deliberately indifferent to the risk that Plaintiff would suffer needless pain from that point on. *See  Canady v. Wilkinson*, 90 F. App'x. 863, 865 (6th Cir. 2004) (citing *Estelle v. Gamble*, 429 U.S. at 104-06) (Any gaps in plaintiff's medical care were at most negligence and did not support a deliberate indifference claim)); *Santiago v. Ringle,* 734 F.3d 585, 592 (6th Cir. 2013) (Awarding defendant summary judgment where there was no evidence that he thought the speed at which the new treatment was provided posed a substantial risk of harm, particularly where the inmate continued to receive the previously-prescribed treatment)).

Accordingly, even assuming that the objective component of the deliberate indifference test has been met in the present case, which it has not, there is no evidence that Defendant knew of and disregarded "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. On the contrary, rather than knowing and disregarding a risk to Plaintiff's health or safety due to the lack of access to Ditropan and/or Ensure, not only was Plaintiff  administered Ditropan, Flexeril, Tramadol, and Elavil while under Defendant's care, but also she tracked Plaintiff's weight and BMI, and she spoke with and arranged for Plaintiff's roundtrip visits with specialists: to a urologist on June 22, 2022 and September 26, 2022; for a CT scan on July 29, 2022; for two Transurethral Resection Prostrate ("TURP") biopsies on November 28, 2022, and December 16, 2022; to an oncologist on April 7, 2023; and for his Bacillus Calmette Guerin ("BCG") immunotherapy treatment for bladder cancer on April 20, 2023, April 27, 2023, May 4, 2023, May 11, 2023, and May 18, 2023. *See* Exhibit B, Medical Records attached to the Declaration of Kelli Cardaras, *passim*. Accordingly, Plaintiff cannot establish the subjective component of his deliberate indifference claim either. *Majors*, 821 Fed. Appx. at 541.

"Deliberate indifference is a high standard; consequently, medical malpractice, negligent diagnosis or treatment, and mere disagreement with medical treatment are inadequate to state a § 1983 claim." *Theriot v. Maclaren*, No. 21-2596, 2022 U.S. App. LEXIS 6881, at *6 (6th Cir. Mar. 16, 2022) (citing *Estelle*, 429 U.S. at 106; *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017)). Certainly, Plaintiff's allegations make clear that he disagrees with the treatment he has received. However, such a disagreement does not state an Eighth Amendment claim. *Id.*; *see also Taylor v. Well Path Med.*, No. 3:22-CV-00705, 2024 U.S. Dist. LEXIS 149569, at *18 (M.D. Tenn. Aug. 20, 2024) (inmate's "desire for different, more aggressive, or more prompt treatment is simply not sufficient to support a constitutional claim"), *report and recommendation adopted*, No. 3:22-CV-00705, 2024 U.S. Dist. LEXIS 185369 (M.D. Tenn. Oct. 10, 2024). Moreover, even if Plaintiff's allegations showed that Defendant made a mistake in treating him for the effects of his bladder cancer, the allegations would amount to negligence, which is also insufficient to state an Eighth Amendment claim. *See Loyd v. Hacker*, No. CV 6:21-53-WOB, 2021 U.S. Dist. LEXIS 70240, at *2 (E.D. Ky. Apr. 12, 2021) ("[A]llegations of medical malpractice or negligent diagnosis and treatment are not cognizable in the constitutional context."); *Gabehart v. Chapleau*, No. 96-5050, 1997 U.S. App. LEXIS 6617, at *5 (6th Cir. Apr. 4, 1997) (finding "[m]isdiagnoses, negligence, and malpractice" are not "tantamount to deliberate indifference"). Accordingly, Defendant is entitled to summary judgment on Plaintiff's deliberate indifference claim. *Id.*

## IV. Qualified Immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

11

Ed. 2d 341 (2013). The Sixth Circuit generally asks two questions to determine whether prison officials are entitled to qualified immunity: whether "the plaintiff has shown that a constitutional violation occurred" and whether "the right was clearly established at the time of the violation." *Santiago v. Ringle,* 734 F.3d 585, 593 (6th Cir. 2013) (quoting *Harris v. City of Circleville*, 583 F.3d 356, 365 (6th Cir. 2009)). But if the undisputed facts show that an official committed no constitutional violation at all, then a court may dismiss a plaintiff's claim on this basis alone, without ever proceeding to the "clearly established" prong. *Stringer v. Roach*, Case No. 2:23-cv-11829, 2025 U.S. Dist. LEXIS 146225, at *7 (E.D. Mich. 2025) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Therefore, as established above, because Plaintiff has not shown that a constitutional violation occurred in this case, Defendant is entitled to an award of qualified immunity. *Id. See also Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity").

But Defendant should also be awarded qualified immunity because he cannot show a clearly established right to either nutritional supplementation or to Ditropan. A right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Although an earlier case need not have resolved the exact issue, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). In other words, there must be "binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point." *Wenk v. O'Reilly*, 783 F.3d 585, 598 (6th Cir. 2015) (quoting *Gaspers v. Ohio Dep't of Youth Servs.*, 648 F.3d 400, 417 (6th Cir. 2011)).

By contrast,  here the constitutionality of Plaintiff's deliberate indifference claim is not even debatable. Crucially, there is no case law suggesting that Plaintiff has a clearly established right to be afforded Ensure when there is no evidence that he cannot tolerate solids, no evidence that he is suffering from facial injuries, no evidence that he is at risk of losing a significant amount of weight and/or muscle mass, and no evidence that any physician or ALP ordered him to be provided with a nutritional supplement. *See* Exhibit B, Medical Records and OSU's Discharge Orders attached to the Declaration of Kelli Cardaras, p. 20 of 25.

Neither is there any case law suggesting that Plaintiff has a clearly established right to be provided with Ditropan for pain when the evidence shows that it is used to treat bladder spasms, when the evidence shows that Plaintiff  specifically asked Defendant to stop his Ditropan because he did not like its side effects, when the evidence shows that Plaintiff's prescription for Ditropan had expired, when the evidence shows that Plaintiff never asked Defendant to renew his Ditropan prescription, when the evidence shows that Defendant was in fact unaware that Plaintiff's Ditropan prescription had expired, when the evidence shows that OSU ordered Plaintiff to be provided nothing other than over-the-counter medication for pain, when the evidence shows that Plaintiff visited Nurse's Sick Call for pain, not bladder spasms, just two days before he was to be transferred to another prison, and when the evidence shows that the nurses at Nurse's Sick Call referred Plaintiff to an ALP at his transferee prison rather than to the Defendant. *See* Exhibit B, Medical Records and OSU's Discharge Orders attached to the Declaration of Kelli Cardaras, p. 20 of 25.

Critically, once Defendant maintained she was entitled to qualified immunity the burden shifted to Plaintiff to establish that she is not entitled to the defense. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013). Although Defendant is entitled to qualified immunity if Plaintiff cannot demonstrate  both  that  his  constitutional  rights  have  been  violated  and  that  there  is  binding

precedent supporting his constitutional claim, Plaintiff has shown neither. On the contrary, Plaintiff has failed to identify that any constitutional violation has occurred, nor has he cited any relevant case law that would have put Defendant on notice that the medical care she provided him was constitutionally deficient in any given way. Under these circumstances Defendant is entitled to qualified immunity as a matter of law. *Graves v. Malone,* 810 Fed. Appx. 414, 435 (6th Cir. 2020).

<div style="margin-left:40%">

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*s/ Mindy Worly*
MINDY WORLY (0037395)
Principal Assistant Attorney General
Criminal Justice Section
Corrections Litigation Unit
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 644-7233/Fax: (866) 474-4985
Mindy.Worly@OhioAGO.gov

*Counsel for Defendant*

</div>

## LOCAL RULE 7.1(f) CERTIFICATION

I certify that the foregoing memorandum complies with Local Rule 7.1(f).

<div style="margin-left:40%">

*s/ Mindy Worly*
MINDY WORLY (0037395)
Principal Assistant Attorney General

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, *Motion of Defendant Cardaras for Summary Judgment,* has been electronically filed on March 31, 2026, and was served upon Plaintiff, via U.S. mail, postage prepaid, at the address below:

Lonnie Thompson, #A640-614
Trumbull Correctional Institution
5701 Burnett Road
Leavittsburg, OH 44430

*s/ Mindy Worly*
MINDY WORLY (0037395)
Principal Assistant Attorney General

15