**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**LONNIE THOMPSON,**

      Plaintiff,

vs.

**JULIE A. HENSLEY, et al.,**

      Defendant(s).

**FILED**

**JUN 05 2026**

CLERK, US DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

**Case No. 1:23 cv 1656**

**HONORABLE JUDGE PAMELA
A. BARKER**

**MAGISTRATE JUDGE JAMES
E. GRIMES, JR.**

---

**PLAINTIFF'S REPLY IN OPPOSITION TO DEFENDANT CARDERAS'S
MOTION FOR SUMMARY JUDGMENT**

---

Now comes the Plaintiff, Lonnie Thompson, *pro-se*, who respectfully provides his Reply in Opposition to Defendant Carderas' Motion for Summary Judgment pursuant to Fed.R.Civ.Proc. 56. Plaintiff asserts his claims against Defendant Carderas (hereinafter "Defendant") is valid, constitutional, and supported by the evidence. Plaintiff addresses the Defendant's contentions to the contrary as follows:

**I.     The Summary Judgment Standard.**

While Plaintiff does not disagree with the standard of law as presented by Defendant, he would expand the standard set forth by the law that encompasses the same.

Initially, it is only when the movant establishes the lack of a genuine issue of material fact, that the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(e)). The Defendant's burden at the summary judgment stage is to point the court to the absence of evidence of any essential element of

1

Plaintiff's claims. See Id., at 323.

Pursuant to Fed. R. Civ. P. 56(c)(4): "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." And a "prisoner's sworn affidavit, standing alone, may create a genuine dispute of material fact that forecloses summary judgment...even if the record lacks corroborating evidence." *Lamb v. Kendrick*, 52 F.4th 286, 296 (6th Cir. 2022). In addition to the cited materials, Fed.Civ.Proc.R. 56(c)(3) also permits the Court to consider all other materials in the record.

Genuine disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) Summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

## II. Plaintiff Exhaustion of Grievance

Plaintiff must show that he has demonstrated that he filed and exhausted all administrative remedies before proceeding to filing a Federal Civil Complaint under the U.S.C. §1983. Stated in the Declaration of Assistant Chief Inspector Roberta Murphy, is swore that the Plaintiff did not fully exhaust his administrative remedy. Here, Plaintiff has provided unequivocal evidence that he exhausted his administrative remedies related to his current Complaint. The Plaintiff would like to submit as evidence the same submitted by Roberta Murphy. Attached *Exhibit "B"*, See Doc #: 94-1 Filed: 03/31/26 8 of 16 Page ID #: 768 and Doc #: 94-1 Filed: 03/31/26 9 of 16 Page ID #: 769. This would be in the included Declaration of the Plaintiff Lonnie Thompson, which contain the statements of his rebuttal to Roberta Murphy's declaration.

2

The Prison Litigation Reform Act (PLRA) requires a prisoner to timely exhaust his administrative remedies before bringing a § 1983 action concerning prison conditions, usually by completing the prisoner grievance process. See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 93, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006); *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011). "[F]ailure to exhaust is an affirmative defense under the PLRA, and [] inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). It is only when it is clear on the face of the complaint that the plaintiff did not exhaust his administrative remedies that *sua sponte* dismissal is permissible. See *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017).

## III. Deliberate Indifference

Plaintiff has challenged his conditions of confinement under the Eighth Amendment, and has clearly shown "that the prison officials [here, Defendant Carderas] acted with 'deliberate indifference' to a substantial risk of serious harm." *Rhodes v. Michigan*, 10 F.4th 665, 673-75 (6th Cir. 2021); *Roland v. Johnson*, 856 F.2d 764, 769-70 (6th Cir. 1988).

In *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968), the Supreme Court affirmed a grant of summary judgment for an antitrust defendant where the issue was whether there was a genuine factual dispute as to the existence of a conspiracy. The Court noted Rule 56(e)'s provision that a party opposing a properly supported motion for summary judgment "'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" The Supreme Court observed further that

> "[it] is true that the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." 391 U.S., at 288-289.

3

The Supreme Court also went on to hold, it was only in the face of a defendant's properly supported motion for summary judgment, that the plaintiff could not rest on his allegations of a factual dispute to get to a jury without "any significant probative evidence tending to support the complaint." Id., at 290. Here, Plaintiff asserts that the Defendant's contentions are not properly supported.

The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care under the Eighth Amendment has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. Id. In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. Id. The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); see also *Phillips v. Roane Cnty.*, 534 F.3d 531, 539-40 (6th Cir. 2008).

Plaintiff asserts that he has met the objective component of the standard, as his claim is based on improper treatment for his two (2) different forms of cancer; bladder and prostate. Every lay person is aware that cancer is a potentially deadly disease, which poses an unquestionable risk of serious harm—to include death—with two forms of coexistent cancer multiplying the risks to Plaintiff's health and very existence.

Having met the first prong of deliberate indifference, the second prong requires a showing that the Defendant knew of and disregarded an excessive risk to inmate health or safety - "the

4

official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Bishop v. Hackel*, 636 F.3d 757, 766-67 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 837). Plaintiff asserts that the Defendant acted with deliberate indifference to the Plaintiff's health or safety. See *Rhodes*. at 673-74. Defendant was more than aware of the facts that a substantial risk of harm existed from Plaintiff's diagnoses and medical records, and, with her medical training, surely drew the inference. *Farmer*, 511 U.S. at 837.

As stated by the Court, quoting *Farmer*, 511 U.S. at 842, the Supreme Court announced a standard for deliberate indifference based on a prison official's act or failure to act "despite [their] knowledge of a substantial risk of serious harm" without the need to "believ[e] that harm actually would befall an inmate." The simple truth is subjective awareness of a risk may be inferred from circumstantial evidence, including the obviousness of the risk and the official's responsibilities. Id. at 832. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . .: A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting Farmer, 511 U.S. at 842).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Plaintiff has shown that pain is harm. See, e.g., *Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir. 1978); *Webb v. Hamidullah*, 281 Fed. Appx. 159, 167 (4th Cir. 2008) (explaining a plaintiff can prevail on a deliberate indifference claim

5

if he can show a delay in treatment resulted in the exacerbation of his medical condition or "frequent complaints of severe pain"). This subjective requirement is necessary because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S. Ct. 2321 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285 (1976) ("deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'")

Defendant Cardaras cannot, in good conscious state and say that she never knew of the very high risk of the pain, suffering and the harm she caused the Plaintiff by not following the doctor ordered medications and treatment for the Plaintiff. With this knowledge of what the doctors had ordered what types of medications and treatments, this is and was a deliberate indifference to the Plaintiff. Defendant Cardaras is a Nurse Practitioner with a license provided by the State of Ohio Medical Broad and surely should have known that any deviation from doctor ordered medication and/or treatments would be again her Hippocratic Oath, her agreement with the State of Ohio, Department of Rehabilitation and Correction's policy when it came to her position as a Nurse Practitioner.

Defendant Cardaras should not be able to claim she had no knowledge to the Plaintiff's high risk of losing weight or muscle mass when the Defendant had complete and all privilege knowledge of the Plaintiff's compromised immune system and the greater possibility of harm that could be. That Defendant Cardaras' actions were more than de minimis due to the fact that the Defendant did not follow up the doctor ordered pain/muscle spasm medicine "Ditropoan". This medicine was not given to the Plaintiff for over (4) four weeks after the Plaintiff had surgery on his bladder for the removal of a cancerous tumor located in his bladder. The Plaintiff still has bladder cancer today of this filing.

6

As stated in the Court's Memorandum Opinion and Order, Doc#: 80 filed: 10/30/25, 29 OF 42. Page ID #:632, the Court states that Defendant Cardaras "refused to follow and carry out medical orders." (Id. At Page ID #413.)

In Defendant Cardaras' Motion for Summary Judgment, Doc #94 Filed: 03/31/26, 9 of 15. Page ID #: 754, it states "Accordingly, rather than being at risk of losing weight or muscle mass, under Defendant's care Plaintiff was well on his way to becoming obese". Defendant further states, "Not only was there no indication that Plaintiff suffered from any nutritional deficiency, but also there was no suggestion that he was under weight or that he was at risk of being so." Defendant Cardaras would like to take credit of the Plaintiff gaining weight, but not taking responsibility for not following Ohio State University Hospital doctor ordered medications. The Plaintiff only gained weight out of his own doing by consuming every meal and everything available he could purchase from the institutional commissary. Not from the Defendant administering or ordering double meal portions or issuing any nutritional supplements.

This claim by Defendant Cardaras is totally untrue of the risk the Plaintiff was and still is, at high risk of losing muscle mass and weight due to the fact that the Plaintiff still has bladder cancer and an immune deficiency disease. All of these facts, the Defendant had this knowledge of the Plaintiff's health and the high risk are unambiguous. A fact that was known to the Defendant at the time Defendant Cardaras denied the Plaintiff doctor ordered medications. That said denial of doctor ordered medication did cause *harm*. Harm brought on and by the Defendant's actions and her denial of pain medication and other medicines prescribed by Ohio State University Hospital doctors.

Defendant conceded that the Court, in its denial of the previously filed Motion to Dismiss,

7

that if Plaintiff's allegations were true, that "not only did Defendant violate Plaintiff's clearly established Eighth Amendment right to his prescribed treatment, ECF No. 80, PageID 643, but she was 'personally involved in the deprivation of federal rights' alleged in the Complaint." Doc. 94, PageID# 752. Plaintiff will show that the evidence supports his claims made in the pleadings.

**Evidentiary review** – Initially, Defendant claims she "never denied Plaintiff access to a prescribed plan of treatment." Doc. 94, PageID# 752. The evidence in support of Plaintiff's claims is provided herein by reference and exhibit. The evidence includes kites, medical records and Health Service Request (HSR) forms.

1. 10/25/22 – Plaintiff sent an HSR for complaints of blood in urine and pain with urination and requested pain medication. None were documented as being provided. Exhibit "C"

2. On 12/16/22, Plaintiff was seen, but the issue of his pain was not addressed, and no examination was done. Doc # 94-2, PageID# 781.

3. On 12/21/22, Plaintiff had filed a grievance due to having filed two (2) HSRs with no response. Doc # 94-1, PageID# 765.

4. On 12/26/22, Plaintiff sent an HSR and requested pain medication for "extreme pain." Exhibit "D". His complaint went unresolved.

5. On 1/11/23, Plaintiff kited medical for request to see Defendant Carderas for lower back and kidney/abdominal pain. Doc 94-1, PageID# 767. His complaints went unresolved.

6. On 1/13/23, Plaintiff sent an HSR wherein he requested pain medications following the kite for the same two days' prior, documented in #5. His pain went unresolved. Exhibit "E".

7. On 2/15/23, Plaintiff sent an HSR for complaints of severe pain, and requested treatment/medications prior to his pain becoming "unbearable." Exhibit "F".

8

8. In a medical record dated 3/1/23, Plaintiff was seen by Defendant Carderas, but no pain medications were provided. Doc 94-1, PageID# 788.

9. In a medical visit with Defendant Carderas on 3/16/23, Plaintiff complained of pain following his surgeries at OSU. Doc# 94-1, PageID# 790. Ditropan and tramadol were mentioned, but no prescription was issued. Id., at PageID# 792.

10. Due to no appropriate response or treatment to his ongoing serious medical needs, Plaintiff filed a grievance on 3/21/23, outlining her refusal to provide pain meds. Doc# 94-1, PageID#768.

   a. In a response to his grievance on 3/21/23, Plaintiff explained that if he continues under care of Defendant Carderas that there will be further problems, due to her refusal to provide him pain medications. Doc# 94-1 PageID# 770.

   b. In an additional response to his grievance, on 3/27/2023, Plaintiff explained that medical staff, to include Defendant Carderas, were not giving him pain medications as prescribed by OSU post-surgery. Plaintiff related the failure to provide Ditropan (oxybutynin) being a "total neglect. " Doc# 94-1. PageID# 770.

   c. In the midst of his addressing issues on his grievance, Plaintiff sent an HSR on 3/30/23, where he noted that he never had a follow-up with Carderas after surgery and having catheters removed. Plaintiff complained of "extreme pain." Exhibit "G". No remedy was provided.

   d. In a response to his grievance, on 4/19/23, Plaintiff stated he was still having pain and that his other medications were not effective. PageID# 769-770

   e. On 4/19/23, in a staff response to his grievance, Mr. Scott, Medical Administrator, stated he had a meeting with Plaintiff and Defendant Carderas where Plaintiff agreed

9

to a treatment plan. However, Defendant Carderas was not present. The discussion was in regard to Plaintiff's mental health issues and psychiatric medication for pain, with the decision regarding medications to remove the Remeron and add Elavil. This was more for mental health issue and did not address or alleviate Plaintiff's pain. Plaintiff won the grievance on the medical issue regarding the failure to provide Ditropan as prescribed, and it was agreed that it took too long to provide it. PageID# 769-770

f. In a response to his grievance, on 4/19/23, Plaintiff told staff that Defendant Carderas refused to provide adequate pain meds, she only wants to admit him into the infirmary. This is not treatment. Plaintiff complained of pain and inability to sleep, with related fatigue. Plaintiff clearly stated Elavil was not effective for his pain. Stated "I am fighting two (2) different life threatening ailments." Escalated grievance to Office of Chief Inspector, reviewed by Karen Stanforth. PageID# 768-769.

11. On 4/11/2023, Plaintiff had a medical visit with Defendant Carderas. Due to the poor treatment of Plaintiff, he was upset. He reasonably complained about the delay in his being provided oxybutynin when catheterized (he was not catharized at the time of the visit, but had continuing bladder spasms), and his pain being uncontrolled, when he had undergone several surgical procedures and was diagnosed and fighting two (2) types of cancer. Doc # 94-2, PageID#s 800-801.

12. On 7/21/23, Defendant Carderas documented Plaintiff's post-op release orders. Doc # 94-2, PageID#s 793-799. No genitourinary examination was documented as having been performed. The orders clearly state Plaintiff was ordered oxybutynin, Doc# 94-2, PageID# 798, and under medications it lists "oxybutynin, and tramadol." Id.

10

13. On 7/28/23, Dr. Elkhatib from OSU provided orders that included Ensure, to address the accompanying weight loss from cancer. This was not provided by Defendant Carderas. Cancer is a condition that requires additional nutrition to prevent weight loss and provide nutrients essential in fighting the disease. Exhibit "A".

14. Plaintiff also would have the Court review and take judicial notice of his affidavits filed with the Reply.

It is obvious from Plaintiff's continuous and ongoing complaints and the issues presented in the grievance that the medical record was woefully inadequate in recording and addressing his ongoing severe complaints related to his multiple and life-threatening conditions. The concession in the grievance of the excessive time to provide him with Ditropan is just one example of the failures of Defendant Carderas to provide appropriate care for a serious medical need. PageID# 769-770. The meeting that was held and alleged to have addressed the pain issues only addressed Plaintiff's mental health (MH) issues and the delay in providing the Ditropan. There was no serious discussion of the Plaintiff's pain from his multiple conditions, which included two (2) forms of cancer. There was no resolution to the issue of Defendant Carderas refusing to provide the same. See summary of meeting in Response by Karen Stanforth, Chief Inspector's Office, Doc# 94-1, PageID# 768.

The medical documentation omits many of the Plaintiff's complaints expressed in the grievance of 3/21/23 and multiple Health Services Request (HSR) forms. It is unreasonable to conclude that he would write a grievance and multiple HSRs and then not mention any of the symptoms at a subsequent visit to medical. It is clear that Plaintiff relayed his lack of treatment and resultant pain and suffering at the hands of Defendant Carderas to the medical staff at RCI on multiple occasions and in multiple formats. Defendant Carderas repeatedly withheld prescribed

treatment to Plaintiff, who suffered from multiple painful, serious and life-threatening medical needs and provided no adequate substitutes which is consistent with the wanton infliction of pain and suffering.

## IV. QUALIFIED IMMUNITY

Defendant Cardaras requests that this Court grant her Immunity as a defense for Summary Judgment. Defendant Cardaras' is misinformed under the necessary requirements for Qualified Immunity. Defendant Cardaras is not directely employed by the State of Ohio but is hired through a outside contractor by the State of Ohio from an agency that the Defendant works for and is paid by that agency. A physician who is employed by an independant contrator with the State of Ohio to provide medical serives. A physician employed by an independent contracto is not a state employee within the meaning of O.R.C. §109. 36(A)(1)(b).

It has long been established that physicians who render medical servieces to inmates pursuant to a contract with a state, <u>act under color of state law</u> for purposes of §1983. West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 101L.Ed. 2d 40 (1988). However, "a party is not entitled to assert qualified immunity simply because he is amenable to suit under §1983. McCullum v. Tepe, 693 F.3d 696, 700 (6th Cir. 2012)(psychiatrist employed by non-profit entity to provide services in county jail not entitled to assert qualified immunity). It is only if "(1) there was a firmly rooted history of immunity for similarly situated parties at common law; and (2) whether granting immunity would be consistent with the history and purpose of §1983," that the party may invoke the protections of the defense. Id. (citing

12

Filarsky v. Delia, U.S. 132 S.Ct. 1657, 1662, 182 L.Ed. 2d 662 (2012)).

In Lee v. Willey, 543 F. Appx. 503 (6th Cir. 2013), in which the Sixth Circuit held that a psychiatrist working on a contract basis for the Michigan Department of Corrections could not assert the protections of the defense of qualified immunity, reaffirmed McCullum on this issue, Lee at 503-04.  In doing so, the Sixth Circuit rejected the propositions that (1) previous Supreme Court decisions provided for common-law immunity for private doctors; (2) the McCullum Court erroneously assumed that nineteenth century courts' silence on this issue meant that did not exist; (3) physicians are not distinguishable from other protected functions; and (4) McCullum applies only to private prisons and private prison employees. Id. at 506-07.

In Sanchez v. Oliver, 995 F.3d 461, [**5], here there is no questions that Oliver, as a medical professional treating a pretrial detainee on behalf of a governmental entity, was acting under color of state law for purposes of §1983.  See West, 487 U.S. at 54.  As a private actor, Oliver may be liable for acting under color of state law under §1983, but "it does not necessarily follow that [she] may assert qualified immunity."  As an employee of a private firm systematically organized to perform the major administrative task of delivering healthcare services to inmates, detainees, and juveniles, Oliver is categorically ineligible to claim qualified immunity.  Further, Sanchez has put forth enough evidence for a reasonable trier of facts to infer that Oliver knew Gauna was at serious risk of suicide, and chose to ignore the risk.  We reverse and remand.  Perniciaro v. Lea, 901 F.3d 241, 251 (5th Cir. 2018); see also Brewer v. Hayne, 860 F.3d 819, 823 (5th Cir. 2017)("A defendant may act under the color of state law for the

13

purposes of §1983 without receiving the related protections of qualified immunity.") The traditional definition of acting under color of state law requires that the defendant in a §1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.

## CONCLUSION

Wherefore, the Plaintiff asserts he has provided evidentary support of his claims against Defendant Cardaras which should overcome summary judgment in her favor. The record shows a disregard of risks known to the Defendant in the treatment, or lack thereof, of the Plaintiff's serious medical needs. Plaintiff agonized unnecessarily, which is the wanton infliction of pain; pain being considered harm. Plaintiff prays that this Honorable Court so finds and permit the above-captioned case to proceed further until proper resolution can be had in the form of a jury trial or agreeable settlement so that the interests of funda-mental fairness and due process as the U.S. Constitution are satified.

Respectfully submitted,

Lonnie Thompson, pro-se
# 640-614
Trumbull Correctional Inst.
Post Office Box 901
Leavittsburg, OH  44430

## CERTIFICATE OF VERITY AND SERVICE

I, Lonnie Thompson hereby certify that the foregoing is true and correct under the penalty of perjury and a copy of the Plaintiff's Reply in Opposition Defendant's Motion for Summary Judgment was mailed to Counsel for Defendant, Ohio Attorney General, at 30 E. Broad Street, 23rd Floor, Columbus, OH 43215 on this 28 day of May, 2026.

Lonnie Thompson

14